## SEWARD'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5657.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1947.

Benjamin T. Kinsey, Jr., of Petersburg, Va. (J. Gordon Bohannan, of Petersburg, Va., on the brief), for petitioner.

Austin Hoyt, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Helen R. Carloss and Helen Goodner, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal involves an adjudication by the Tax Court of a deficiency in federal estate tax in the sum of $25,506.80 due to the failure of the executor of the estate of Harvey Seward to include in the gross estate the proceeds of three insurance policies and two endowment policies on the life of the decedent, on which he had paid the premiums, and which he assigned to the Petersburg Savings & Trust Company as trustee during his life. The principal question in the case, which arises under Section 811(g) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(g) (2), is whether the decedent at the time of his death on February 17, 1943, held any of the incidents of ownership with respect to the policies exercisable either alone or in conjunction with any other person. See also Section 811(c).

During his lifetime, the decedent had taken out five insurance policies in the aggregate sum of $90,000, three of which were limited payment life policies and two were endowment policies. The three life policies were: Phœnix Mutual Life Insur-

ance Company of Hartford, $30,000; Equitable Life Assurance Society of the United States, $30,000; Travelers Insurance Company of Hartford, $5,000. The two endowment policies were issued by Provident Mutual Life Insurance Company of Philadelphia in the respective sums cf $15,000 and $10,000.

On April 24, 1919, the decedent assigned all of the monies payable after death on these policies to the Petersburg Savings & Trust Company, as trustee, by three separate agreements. In one agreement he assigned the monies payable on the Phœnix policy for $30,000 for the benefit of his daughter Dorothy. In another he assigned the proceeds of the Equitable policy in the sum of $30,000 for the benefit of his daughter Sarah; and in the third he assigned the proceeds of the Provident policies and the Travelers policy, in the aggregate sum of $30,000, for the benefit of his daughter Harvey. Under the assignments the trustee was to collect the monies payable on the policies after the decedent's death and to hold the same absolutely and without reservation, free from the control, claims, demands and charges of the decedent and of his heirs or personal representatives, or any person whatsoever. The trustee was authorized to invest the proceeds and was directed to pay the net income quarterly to the beneficiary for life, and to pay the principal at the beneficiary's death to her appointees by will. If no appointees were named in the will of the beneficiary, it was provided that the principal was to be paid to her descendants and if none, to the decedent's other children and their descendants.

Subsequent to the execution of these deeds, the following transactions took place with respect to the policies in question. On June 16, 1919, the decedent changed the beneficiary in the Travelers policy from his estate to the trustee, subject to the terms of the trust of April 24, 1919. The decedent had the power to change the beneficiary in this policy and he made the change on a form which reserved to him the right to make a further change of beneficiary.

On June 20, 1919, the decedent changed the beneficiary under the Equitable policy from his wife to the trustee. Under this policy the assured had the right to change the beneficiary and in the document executed on June 20, 1919, the decedent represented that there was no existing assignment of the policy and expressly reserved the right of revocation with respect to the change of beneficiary.

On February 21, 1920, the decedent executed an instrument whereby he assigned unto the Trust Company the Phœnix policy itself, together with any monies payable thereunder after his death, in trust, upon substantially the same terms as those of the trust created on April 24, 1919; but the 1920 assignment expressly provided that the decedent could revoke it during his life by filing written notice with the trustee and the Insurance Company, and further provided that it was subject to the beneficiary provisions of the policy and that a change in beneficiary made under the reservation provided in the policy would constitute a revocation of the trust agreement.

On June 25, 1919, the wife of the decedent assigned to him all her right, title and interest in the Provident Insurance policy for $15,000, which was payable to her.

On June 26, 1919, the decedent executed an assignment of the Provident endowment policy for $15,000 to the Trust Company as trustee under the deed of April 24, 1919; and on June 30, the decedent executed a similar assignment with respect to the Provident endowment policy for $10,000. Each assignment transferred to the trustee under the deed of April 24, 1919, all the right, title and interest of the decedent in the policy covered thereby and all advantages to be derived therefrom and constituted the trustee the decedent's lawful attorney to collect all monies which under the policies should become owing.

Both Provident policies matured in 1937, while the decedent was still alive. On April 28, 1937, and September 29, 1937, respectively, the decedent and the trustee by two instruments directed the Insurance Company to retain the proceeds of the two policies and to pay the interest therefrom in semi-annual installments to the de-

cedent for his life, without right of withdrawal, and to pay the proceeds on his death with accrued interest to the Trust Company as trustee; and the Insurance Company, in consideration of the surrender of the policies, agreed to carry out the direction.

On August 24, 1931, the decedent and the trustee joined in a suit in the Hustings or Corporation Court of the City of Petersburg against the four insurance companies above named. They alleged in the complaint that in executing the assignments of April 24, 1919, it was not the intention of the decedent or of the trustee to deprive him of the control of the policies during his life, or of any of the rights and benefits to which he was entitled thereunder, but the intention was merely to name the trustee as beneficiary of the policies, and to transfer to it the monies payable after the decedent's death, to be held in trust for the purposes set out in the assignments; and further that it was not the intention of the parties that the decedent should not have the right during his life to borrow money on the policies or to change the beneficiaries or to cancel the trust agreements. The complainants prayed the court that the contracts of assignment be construed and if necessary, reformed, so as to express the true intent of the parties and to reserve to the decedent full dominion and control of the policies during his lifetime. The beneficiaries of the trusts answered the complaint stating that they believed the statements therein to be true, and expressed their willingness that the relief prayed be granted. The Insurance Companies on the other hand demurred to the complaint on the ground that the court was without authority to reform the agreements. Subsequently, on October 20, 1936, the suit was dismissed with the consent of all the parties.

The decedent was the holder of another Equitable policy in the sum of $100,000, which is not involved in this suit. On April 24, 1919, he created a trust with the same trustee for the benefit of his wife under terms similar to those in the trusts created for the benefit of his daughters, that is to say, he assigned to the trustee in trust for his wife all monies payable after

his death under the policy. Thereafter, between 1922 and 1935, he borrowed the aggregate sum of $62,597.17 from the Insurance Company on this policy, all of which was paid to him and not to the trustee. On May 25, 1936, the cash surrender value of the policy was applied to the payment of the loans and the policy was surrendered to the company.

The initial question in the case relates to the proper interpretation of the agreements of April 24, 1919, whereby the monies payable after the death of the insured were assigned to the trustee for the benefit of his daughters free "from the control, claims, demands and charges of the party of the first part (the decedent) his heirs and personal representatives and of any person whatsoever." The taxpayer says that these words indicate that Seward not only transferred the monies payable after death to the trustee, but also relinquished all control over the policies whatsoever; and the taxpayer therefore contends that any subsequent acts of the parties inconsistent with this interpretation must be disregarded, for otherwise the rights of the parties would not be governed, as the law requires, by what they had written in formal contracts but by extrinsic parole evidence that changes their terms.

Taxation, however, is a practical matter and in this field the courts will not be bound by legal refinements in the literal interpretation of contracts when there is evidence that they do not express the real intent of the parties. Compare Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 77 L.Ed. 1439. Moreover, the language of the agreements before us is not entirely free from ambiguity. It is noteworthy that the policies themselves were not assigned but only the proceeds thereof; and this form of assignment may be contrasted with that employed with respect to certain of the policies, for example, the Phœnix and the Provident policies, when the insured subsequently executed conveyances to the trustee and in express terms assigned not merely the proceeds of the policies but the policies themselves. If the mere restricted form was used designedly by the parties in the assignments of April 24, 1919, the trustee was

merely given control of the insurance monies after the death of the insured, and he did not relinquish control of his reserved rights under the policies during his life, such, for example, as the right to change the beneficiary. This construction of the agreements gives adequate play to their provisions, for in the absence of subsequent acts of the insured, the trustee would receive the insurance monies upon his death and would be able to use them for the trust purposes free from the control of the estate or the heirs or of any other person. In this view the assignments of April 24, 1919, would be tantamount to the designation of a beneficiary who, in the absence of a later designation, ordinarily takes the proceeds of an insurance policy without interference from the estate or from creditors of the insured.

At least it must be said that the taxpayer's is not the only reasonable interpretation which the assignments will bear, and it is a familiar rule of law that in case of ambiguity, the practical interpretation placed upon a contract by the subsequent acts of the parties themselves may be taken into consideration. 12 Am.Jur., Contracts, § 249. Obviously the parties in this case did not consider that the insured had relinquished all control over the policies. He changed the beneficiaries in the Travelers and Equitable policies so as to make them payable to the trustee, reserving the right to make further designation of beneficiaries. In the case of the Phœnix insurance he made an assignment of both the policy and the proceeds thereof, but reserved the right to revoke the assignment during his life and stipulated that a subsequent change of beneficiary would constitute a revocation of the trust agreement. Moreover, he borrowed money under an Equitable policy, not here involved but covered by an assignment to the trustee on the same date and upon substantially the same terms as the assignments covering the policies in suit, and both he and the trustee, when they sought a reformation of the policies in 1931 in a suit filed in the Hustings Court of Petersburg, made the formal statement that it was not the intention of the parties that the insured should relinquish the control of the insurance during his life. These repeated assertions of control over the policies by the insured fully justify the conclusion of the Tax Court that the assignments of April 24, 1919, were not intended to put the policies beyond the control of the insured.

These observations apply also to the endowment policies since they were assigned on April 24, 1919, by an agreement of the same purport and effect as the others executed on that date. Subsequently in June, 1919, the insured undertook to assign not only the proceeds of these policies after his death but also all his right and title therein to the trustee. In the new documents the continuing interest of the insured is implied by the appointment of the trustee as his agent to collect the proceeds of the policies upon maturity; and these assignments, it should be remembered, were also included in the suit for reformation filed by the parties in the state court. The policies matured in 1937 but neither the parties to the assignments nor the Insurance Company treated the assignments as if they had divested the insured of all control over the insurance. On the contrary, they directed the Insurance Company to retain the proceeds and to pay the interest thereon to the insured for life and upon his death to pay the principal to the trustee, and the Company, upon the surrender of the policies, agreed to this disposition of the money. Manifestly the parties construed the June assignments, which made reference to the earlier assignments of April, as consistent with retention of a measure of control by the policyholder during his life.

The question arises as to whether the endowment policies are covered by Section 811(g) (2) of the Code which in terms applies to amounts receivable by beneficiaries as "insurance on the policies of the life of the decedent." Amounts receivable as the result of transactions which involve at the time of their execution no actual insurance risk are not receivable as insurance within Section 811(g) (2); Helvering v. LeGierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L. Ed. 1871, 159 A.L.R. 1330; Chew's Estate v. Commissioner, 5 Cir., 148 F.2d 76;

and it may be thought that the proceeds of the matured policies in the hands of the Insurance Company are not insurance monies but investments for which the company has accepted responsibility. The question, however, is unimportant in this case for even if the proceeds of the endowment policies are not includible in the taxable estate as insurance under Section 811(g)(2), they are includible in the estate under Section 811(c) as interests in property of which the decedent made a transfer to take effect in possession or enjoyment on or after his death, or as interests in property of which the decedent retained the right to income for his life. Helvering v. LeGierse, supra; Schultz v. United States, 8 Cir., 140 F.2d 945; Burr v. Commissioner, 2 Cir., 156 F.2d 871.

Affirmed.