*Decision will be entered under Rule 50.*

ESTATE OF CYRUS C. YAWKEY, FIRST WISCONSIN TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16241. Promulgated June 29, 1949.

*Louis Quarles, Esq.*, for the petitioner.
*H. H. Hart, Esq.*, for the respondent.

1166

OPINION.

Opper, *Judge*: Whether any part of decedent's *inter vivos* transfers is to be included in the gross estate depends, as the case is presented and as we view the issues, on the answer to three questions. Respondent proposed the inclusion of the value at decedent's death of three trusts established by him for the benefit of his three granddaughters on two theories: First, that decedent, being a trustee, had a power alone or in conjunction with one of the two other trustees to alter, amend, or revoke the trusts, as envisaged by section 811 (d) (2), Internal Revenue Code;[1] and, second, that in the same manner decedent had the right to designate the persons who should enjoy the income from the property within the meaning of section 811 (c), of the code.[2] Under the latter determination a smaller amount was proposed for inclusion, apparently because one of the three granddaughter beneficiaries had arrived at the age of 25 years when decedent died, and the trusts required the payment of all of the income to the respective beneficiaries upon their reaching that age.

Petitioner insists in the first place that decedent had no power or right in the premises because there was an adequate external standard by which the conduct of the trustees was to be measured and this so

---

[1] SEC. 811. GROSS ESTATE. * * *

* * * * * * *

(d) REVOCABLE TRANSFERS—

* * * * * * *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

[2] (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

circumscribed their actions that neither provision applies. This is the first question, and, if the contention prevailed, it would dispose of the entire controversy. But we can not sustain it.

The only limitation on the use of the trustees' discretion was that what they decided on was to be for the "best interest" of the beneficiary. In the absence of fraud, bad faith, or a mischievously erroneous act, courts of equity will not interfere when the trustees are acting within the scope of their designated discretion. "It is quite true that where the manner of executing a trust is left to the discretion of trustees, and they are willing to act, and there is no mala fides, the court will not ordinarily control their discretion as to the way in which they excercise the power * * *. But the court will interfere wherever the exercise of discretion by the trustees is infected with fraud or misbehavior, or they decline to undertake the duty of exercising the discretion, or generally where the discretion is mischievously and erroneously exercised * * *." *Colton* v. *Colton*, 127 U. S. 300. We can not regard the language involved as limiting the usual scope of a trustee's discretion. It must always be anticipated that trustees will act for the best interests of a trust beneficiary, and an exhortation to act "in the interests and for the welfare" of the beneficiary does not establish an external standard. *Estate of Albert E. Nettleton*, 4 T. C. 987, 992; *Estate of Milton J. Budlong*, 7 T. C. 756, 763; modified sub nom. *Industrial Trust Co.* v. *Commissioner* (C. C. A., 1st Cir.), 165 Fed. (2d) 142. Those words would be implied if they were not expressed, and they add no further limitation than would exist in any trust for that reason. See *Helvering* v. *Helmholz*, 296 U. S. 93. We accordingly concur in respondent's view that under *Estate of Milton J. Budlong, supra*, petitioner's power to designate the income beneficiary is not sufficiently restricted to limit the application of section 811 (c) and (d).

For an additional reason, it is contended that section 811 (d) is inapplicable. This presents the second question. The clause upon which respondent relies for his conclusion that the enjoyment of the property was subject to alteration or termination through the exercise of a power by decedent is the provision permitting the trustees to transfer any part of the principal to a beneficiary after she becomes 30 years of age. At decedent's death all of the beneficiaries were under 30. The condition for the exercise of the power had accordingly not yet been fulfilled. Under authorities now too firmly established to question, a power based on such a future contingency does not suffice to bring the situation within section 811 (d). *Jennings* v. *Smith* (C. C. A., 2d Cir.), 161 Fed. (2d) 74; *Estate of Milton J. Budlong, supra*. And we find nothing in the language or result of the two cases recently decided by the Supreme Court to warrant a departure from the rule thus decisively settled. *Commissioner* v. *Estate*

of *Church*, 335 U. S. 632; *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701. The phraseology in these opinions most heavily relied upon by respondent [3] deals exclusively with title, possession, and enjoyment. This decedent could under no circumstances and in no contingency retain or recapture any of these attributes. The most that he could ever do and the most that respondent suggests that he could do was to change the title, possession, or enjoyment of the principal from the remaindermen to the life beneficiary. That would be an aspect of the transfers rendering them taxable, if the power existed currently, not under the survivorship theory of the *Hallock* case,[4] nor as intended to take effect at death, nor by retention of an interest in the income, cf. *May* v. *Heiner*, 281 U. S. 238, but under the express language of section 811 (d), which covers a power to alter or terminate. It thus resembles such cases as *Jennings* v. *Smith, supra*. But there is no assertion or implication of a reversionary interest in income or principal to assimilate the situation to that in the *Church* and *Spiegel* cases.

Most important, these cases dealt with section 811 (c), while the provision we are now considering is section 811 (d) (2). The difference in the statutory language seems to us, especially in the light of the decided cases, to carry decisive significance with respect to the time of the existence of decedent's retention. Section 811 (c) uses the language "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death," whereas, section 811 (d) (2) employs the simple concept "at the date of his death." While it is true section 811 (d) (3)[5]

---

[3] "* * * In the *Church* case we stated that a trust transaction cannot be held to alienate all of a settlor's 'possession or enjoyment' under § 811 (c) unless it effects 'a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies.' We add to that statement, if it can be conceived of as an addition, that it is immaterial whether such a present or future interest, absolute or contingent, remains in the grantor because he deliberately reserves it or because, without considering the consequences, he conveys away less than all of his property ownership and attributes, present or prospective. In either event the settlor has not parted with all of his presently existing or future contingent interests in the property transferred. He has therefore not made that 'complete' kind of trust transfer that § 811 (c) commands as a prerequisite to a showing that he has certainly and irrevocably parted with his 'possession or enjoyment.' * * *" [*Estate of Spiegel* v. *Commissioner*, 335 U. S. 701.]

[4] *Helvering* v. *Hallock*, 309 U. S. 106.

[5] DATE OF EXISTENCE OF POWER.—For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death.

lists some legislative tests by which this approach may be considered as modified, it does not reach the present situation. Decedent's power did not exist at his death under cases like *Jennings* v. *Smith, supra,* and *Estate of Milton J. Budlong, supra,* and its absence was not due to any such mere formality as the giving of notice or expiration of a formal waiting period. Cf. *Estate of Paul Loughridge,* 11 T. C. 968, 978. The inapplicability of the *Church* and *Spiegel* cases, dealing as they did with the entirely different language of section 811 (c), thus seems to us confirmed. Inclusion under section 811 (d) must accordingly be rejected.

The final proposition advanced by petitioner, presenting the third question, is that section 811 (c) is equally inapplicable both because decedent could not "designate" the persons who should enjoy the income, and, second, because he did not have "the right" to exercise it. The first statement is drawn from the provisions of the trust which, while permitting the trustees to withhold income from a life beneficiary under 25, require that it either be paid to her subsequently, or added to corpus. It is insisted that a complete designation of the ultimate taker is thus withheld from the trustees. The effect, however, of an addition to principal which was within the province of decedent and his cotrustees would be to shift the enjoyment from the life beneficiary to the ultimate taker of the principal, a remainderman whose identity might be indeterminate at the time but whose rights would thereby be tentatively fixed. *Estate of Milton J. Budlong, supra.* The "right" of decedent in the premises is questioned because decedent's two cotrustees could by their combined action frustrate any decision on his part under the majority rule established in the trust instrument. But if decedent joined with either of the other trustees, his action became effective. In our view that is what is meant by the statutory phrase "the right either alone or in conjunction with any person." Granted that decedent did not possess the right alone, it seems to us he clearly retained it in conjunction with the cotrustees. *Estate of John Moir,* 47 B. T. A. 765. We conclude that respondent's determination under section 811 (c), which, as we have said, affects only a portion of the transfers, was proper and must be sustained.

A further issue is suggested, but only briefly discussed. It has to do with the valuation employed by respondent, which included accumulations of income constituting a part of the trust corpus on the date of death. If the matter is in issue, it must be decided in respondent's favor, on authority of *Estate of Daniel Guggenheim,* 40 B. T. A. 181; modified and affirmed (C. C. A., 2d Cir.), 117 Fed. (2d) 469; certiorari denied, 314 U. S. 621; cf. *Commissioner* v. *Estate of Hager* (C. A., 3d Cir.), 173 Fed. (2d) 613; see also *Estate of Spiegel* v. *Commissioner, supra,* where the accumulated trust income was likewise included in the

estate, and that inclusion was approved. If decedent's retention and possession at his death of rights to designate the enjoyment of the income from the property were, as we have held, the statutory ground for inclusion, those rights extended as effectively to the income from the accumulated income as they did to the original principal. Cf. *Estate of Daniel Guggenheim, supra.* In this respect the deficiency must be sustained.

*Decision will be entered under Rule 50.*