DELIA F. SMITH, trustee, *vs.* JOHN C. PAQUIN, administrator.

Bristol.   October 28, 1949. — January 16, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Trust*, Payments to beneficiary.

A decree allowing an amended account of the widow of a testator as trustee under a trust created by his will for her benefit and that of her two daughters was affirmed on appeal by the administrator of the estate of one of the daughters, the other daughter having assented to the original account as filed, where it appeared that the appellant's intestate had had only an interest in income, and that she had been paid all that had become due her.

PETITION, filed in the Probate Court for the county of Bristol on April 24, 1942, for the allowance of an account of the trustee under the will of James F. Smith, late of New Bedford.

The case was heard by *Hitch*, J., and by *Fuller*, J.

In this court the case was submitted on briefs.

*S. Rosenberg, Z. D. Paquin, & J. M. Rosenberg*, for the respondent.

*A. P. Doyle & T. C. Crowther*, for the petitioner.

RONAN, J. This is an appeal from the allowance of the amended fifth account of Delia F. Smith, trustee under the will of her husband, James F. Smith, late of New Bedford.

The testator died on August 12, 1922, leaving his wife and two minor daughters. The residue of his estate was left in trust to his widow, to whom were given the income and the right to apply any part of the principal as she might deem necessary for her comfortable maintenance and support and the support and education of the two children during her natural life, and each of the children was to have one third of the income when she became of age. The trust was to terminate and the property was to go to the widow if both of the children predeceased the widow and died without issue, otherwise the trust was to terminate upon the death of the widow and the property was to go to the daughters or their issue if they did not survive their mother. One daughter, Florence Smith Sylvia, has assented to the account. Her sister, Berenice S. Paquin, became of age on April 28, 1936, and died on March 16, 1941, without issue. Her husband, John C. Paquin, her administrator, objects to various items in the account, which is for the period commencing October 1, 1933, and ending December 31, 1941.

The account was referred to an auditor whose findings of fact were to be final. He filed a report and also a supplemental report upon recommittal. After hearing thereon, the trustee filed an amended fifth account which, after being corrected by the court in minor details, was allowed.

Little distinction between principal and income was made by the trustee in administering the trust or by her children when they became old enough to deal with her with reference to the trust property. No question is raised as to the honesty and integrity of the trustee.

The principal asset of the trust and the main source of income was a mortgage for $127,500, which the trustee received as a part of the purchase price of a theatre which she sold in 1932. She used some of the payments from this mortgage for her own use, and the remainder was used in reducing an indebtedness which the trust owed a bank. The mortgagor in 1934 became unable to continue the payments required by the mortgage, and an arrangement was

made that it should pay $100 a week on the mortgage indebtedness to the bank to be applied to the reduction of the indebtedness of the trust. Indeed the bank insisted that the mortgage payments must be used for this purpose, and the trustee was compelled to assent. The bank commenced to receive the mortgage payments in April, 1934.

The trustee in 1925 sold a large parcel of vacant land to one Lider, who gave back a mortgage for $20,000. The trustee discounted the mortgage note at the bank. Lider was later in default on the mortgage note and an action was brought against him thereon. The matter was finally settled in 1935 by the payment of $1,500 in cash and a conveyance to the trustee of the remainder of the land which Lider had not sold. The premises at that time were subject to unpaid taxes in an amount in excess of $4,000. The bank, having discounted the note in 1925, was owed a balance of $11,489 on this note, and upon the settlement with Lider and in accordance with an arrangement with the trustee it began to apply some of the payments from the theatre mortgage in reduction of this balance. The bank on July 8, 1940, had collected $24,991.51 interest on the theatre mortgage, the indebtedness of the trust had been paid, and the balance on the Lider transaction had been reduced to a few thousand dollars. The bank then permitted the trustee to handle the theatre mortgage.

The administrator contends that a portion of the interest payments ought to have been paid to his wife and not to the bank during the period of her adult life, and that the compromise with Lider was improvidently made. The auditor found that the settlement with Lider was not negligently made by the trustee, who followed the advice of her attorney; and that Berenice shortly after she became of age knew of, assented to, and approved the arrangement which her mother made with the bank with reference to the application of interest from the theatre mortgage. The judge properly ruled that the interest which the bank received and applied in payment of its loans was not to be regarded as income for the purpose of distribution. Bere-

nice, having consented to this use of the mortgage interest, could not complain, and neither can her administrator now object. *Poole* v. *Munday*, 103 Mass. 174. *Pope* v. *Farnsworth*, 146 Mass. 339, 344. *Preble* v. *Greenleaf*, 180 Mass. 79. *Lannin* v. *Buckley*, 256 Mass. 78, 82. *Tracy* v. *Bishop*, 298 Mass. 182. *Turner* v. *Morson*, 316 Mass. 678, 688. *Lipsitt* v. *Sweeney*, 317 Mass. 706, 713–714.

The trustee erected a dwelling on Stetson Street which was carried in her account at a valuation of $50,000. She moved with her two children from her former residence on Hawthorn Street, which was a part of the trust property, and she and her family thereafter for some time occupied the Stetson Street house and later moved back to the Hawthorn Street residence. The Stetson Street property was sold in January, 1935, in exchange for $15,000 in cash and a house on Bedford Street worth $3,100, at which price it was subsequently sold by the trustee. A loss of $31,900 was thus sustained by the trust. Such a large investment for a home would seem to be an improvident one for the trustee to make, even if she was authorized by the will to use such part of the principal of the trust as she deemed necessary for the comfortable maintenance and support of herself and her children. *Lovett* v. *Farnham*, 169 Mass. 1, 5, 6. The general conclusion of the auditor, that the trustee should be allowed this loss, is based upon the evidence which he heard and which is not before us. It does not rest solely on the subsidiary findings reported by him. Nor is it inconsistent with any of those findings. This ultimate finding imports a finding of all subsidiary facts necessary to support it. There is nothing contained in the report showing any error of law in allowing this loss on the Stetson Street property. *Dyer* v. *Siano*, 298 Mass. 537. *Levine* v. *Lawrence & Co. Inc.* 305 Mass. 210. *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541. *Hanifin* v. *C & R Construction Co.* 313 Mass. 651.

The report was recommitted to the auditor to make findings on each and every item in the account, and the only ground argued in support of the appeal from the decree recommitting the report was with respect to the ruling that

the interest paid on the theatre mortgage was not to be re-
garded as income.   The appellant filed objections to the
supplemental report of the auditor, together with a request
for a summary of the evidence with reference to each ob-
jection.   The objections are to findings made by the auditor,
and to his failure to make certain findings.   The appellant
also saved an exception to the exclusion of a letter written
by Berenice to her husband advising him that the attorney
for the trust said that she might expect another payment of
income in eight months and expressing her hope that her
attorney would not attach it.   We see nothing in the letter
of any materiality and perceive no error in its exclusion.
The objection to the failure to make certain findings or to
the findings actually made, in the absence of anything ap-
pearing upon the face of the report showing that they were
erroneous, are of no value.   The appellant apparently recog-
nized his difficulty and sought to have the findings objected
to tested by a summary of the evidence.   So far as appears,
he filed no motion for recommittal of the report for this
purpose.   His request for a summary of the evidence was
directed only to the auditor.   There is nothing in the record
to show that the appellant had complied with the rules or
that he was entitled to any summary of the evidence.   See
Rules 21 and 32 of the Probate Courts (1934).   *Russo* v.
*Thompson,* 294 Mass. 44.   *John A. Frye Shoe Co.* v. *Wil-
liams,* 312 Mass. 656.   *Ravage* v. *Johnson,* 316 Mass. 558.
Furthermore, the only function that objections to an
auditor's report serve is to lay the foundation for a motion
to recommit, and where, as here, no such motion is filed,
the objections become worthless.   *Howland* v. *Stowe,* 290
Mass. 142.   *Old Mill Point Club, Inc.* v. *Paine,* 308 Mass.
505, 506.

The auditor finds that the cash proceeds from the sale of
the Stetson Street property, which he finds was sold for
an adequate price, were divided equally among the widow
and her two children.   Each received $5,000.   When the
Bedford Street property was sold for $3,100, each of the
daughters received $1,550 and also $400 from the sale of

the furniture. Berenice, like her sister, received in all $6,950 from the principal of the trust. These payments constituted breaches of the trust. It is to be assumed that Berenice knew where these funds came from. They were received by her in the year preceding that in which she became of age. The auditor found that these payments should not have been made by the trustee, but he also found that Berenice never repudiated the receipt of these payments or in any way disaffirmed any understanding she had with her mother with respect to the receipt of the money. The understanding mentioned by the auditor was merely that the mother intended that at some time Berenice would be paid her share of the income which had been diverted to other uses. It is probably true that the mother would have made some allowance to Berenice when the condition of the trust property was such that funds could be used for that purpose, provided Berenice lived long enough to permit her mother to realize this intention. Enough appears from the reports of the auditor to indicate that at the time of these payments amounting to $6,950 to Berenice, who was living at home with her mother, she was familiar at least in a general way with the situation of the trust property. Her conduct after the receipt of the $6,950 tends to show that she affirmed these payments after she became of age. After the trust's indebtedness to the bank had been discharged, her mother, her sister and herself met with the attorney for the trust and made an oral agreement by which each of the daughters was to have $50 a week from the $100 weekly payments made by the mortgagor of the theatre and the mother was to have the same amount from dividends from certain shares owned by the trust. Payments of $50 a week were made to Berenice up to the time of her death. We think that from the facts contained in the auditor's reports the judge drew the inference that the payments amounting to $6,950 to Berenice were ratified by her, inasmuch as he ordered the account revised by charging her with these payments. We draw the same inference. The accountant was entitled to be

credited with these payments and to offset them against any balance that might be found due from her to the administrator of her daughter's estate. *Poole* v. *Munday,* 103 Mass. 174. *Crocker* v. *Dillon,* 133 Mass. 91, 102. *Hammond* v. *Hammond,* 169 Mass. 82, 85. *Minot* v. *Purrington,* 190 Mass. 336, 342–343. *Bailey* v. *Smith,* 214 Mass. 114, 120. *Corkery* v. *Dorsey,* 223 Mass. 97. *Tracy* v. *Bishop,* 298 Mass. 182. *Blakemore* v. *Jones,* 303 Mass. 557, 559. Restatement: Trusts, § 254.

We have examined the reports with reference to the rentals collected, the allocation of charges for repairs and taxes, the charges for house maintenance, and the various other remaining items to which objections have been made. Berenice lived with her mother up to the time of her marriage, at times thereafter, and at the time of her death. The trustee was authorized to use the income for the comfortable support of herself and her children and, so far as Berenice was concerned, the trustee was entitled to be credited with that part of the income which she expended for the comfortable support and maintenance of her daughter. It would serve no useful purpose to discuss these various other items which were allowed by the auditor for, as presently will appear, the trustee paid Berenice a greater sum than she was entitled to receive.

In his first report the auditor has set forth a complete and comprehensive accounting between the trustee and Berenice during the period that the latter was entitled to one third of the income. During that period she was entitled to receive and to be credited in the total sum of $4,895.70 and was either paid or charged with a total of $5,264.50. He accordingly found that she was overpaid to the amount of $368.80. Shortly after the death of Berenice at her mother's home, Berenice's husband appeared and told the mother, the trustee, that he wished to have the funeral held in a funeral home. The trustee objected and replied that he could take his wife's body out of the house but if he did so he would have to pay for the funeral. Nothing further was said and the trustee made all the funeral arrangements and

paid for these services. The presumption is that such services are furnished on the credit of the estate, *Constantinides* v. *Walsh,* 146 Mass. 281, *Magrath* v. *Sheehan,* 296 Mass. 263, 265; but one may contract for the furnishing of such services upon his own personal credit with the intention that he and not the estate shall be liable for the expenses incurred. The only inference warranted by the summary of the evidence attached to the first report of the auditor is that the husband of Berenice assented to the trustee's securing these services upon her own credit and that, if he did not so consent, he could take charge and pay the funeral expenses himself. In these circumstances, a finding would be unwarranted that he assumed or agreed to pay these expenses or that, if the trustee paid them, she was to be reimbursed by her daughter's estate. See *Joseph S. Waterman & Sons, Inc.* v. *Hook,* 246 Mass. 522, 527. The allowance to the trustee for payments by the trustee after the death of Berenice, which amounted to $226.95 and were for merchandise and services contracted by Berenice, does not appear to be wrong. G. L. (Ter. Ed.) c. 195, § 15. The auditor was wrong, however, in crediting the trustee with the amount paid for funeral expenses amounting to $874. According to this revised accounting of the auditor, the trustee owed Berenice $505.20. Berenice should also be charged with the said sum of $6,950. Due to the generosity of her mother she has been paid $6,444.80 more than she was legally entitled to receive. It may be that these payments were made by the mother in pursuance of the mother's intention or the daughter's understanding that something would be done for her on account of the income which the mother was not able to pay her because of the attitude of the bank. There is nothing in the reports to indicate that the mother ever made any bargain or contract to pay Berenice on account of the diversion of this income. The matter rested solely in expectation and hope.

On the filing of the auditor's reports, the judge allowed some of the items in the account and declined to pass on other items not because they were wrong but because they

were in the wrong schedule, or were incorrect bookkeeping entries or were not properly expressed, and stated in an interlocutory decree that an amended or substituted account should be filed. This was done and, after some minor corrections, the account was allowed. We do not commend the form of this account, but it is unnecessary to burden this opinion with the making of detailed alterations by which its form would be improved. The administrator of Berenice's estate is the only appealing party; and as the only interest she had in the estate was one third of the income during her adult life, which appears to have been paid to her, her administrator has no further interest in the trust.

*Decree affirmed.*