*Decision will be entered under Rule 50.*

ESTATE OF REBECCA EDELMAN, DECEASED, SAMUEL B. WATERMAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82436. Filed September 28, 1962.

*Morton Schimmel, Esq.,* for the petitioner.
*Philip Shurman, Esq.,* for the respondent.

PIERCE, *Judge:* Respondent determined a deficiency in estate tax in the amount of $4,482.24.

The issue for decision is whether there is includible in the gross estate of the decedent Rebecca Edelman, under section 2041(a)(2) of the 1954 Code, the value of the principal of a trust created under the will of her deceased husband, as to which she not only was given the right to receive the net income for her life, but as to which she also was granted a power to appoint the principal to her own estate, free of the trust. Decision of this issue depends on answers to the following questions:[1]

(1) Was said power to appoint the trust principal a "general power of appointment," within the meaning of section 2041(a)(2) and (b)(1) of said Code?

(2) Did the decedent Rebecca, who never exercised or released said power which concededly never lapsed, have and possess said power at the time of her death?

### FINDINGS OF FACT.

Some of the facts have been stipulated. The stipulation of facts and all exhibits attached thereto are incorporated herein by reference.

The petitioner herein is the executor of the last will and testament of Rebecca Edelman, deceased, who died on November 12, 1955, a resident of the city, county, and State of New York. The Federal estate tax return for the decedent's estate was filed with the district director of internal revenue for the Lower Manhattan District of New York, New York.

Rebecca was the widow of Albert Edelman, who predeceased her on July 9, 1951. Albert, likewise, died testate and a resident of the city, county, and State of New York. His last will and testament, dated December 8, 1950, was admitted to probate in the Surrogate's Court of New York County on July 12, 1951.

Albert's will, after making provision for certain specific bequests, provided insofar as here material, as follows:

*FIFTH:* All the rest, residue and remainder of my property, real, personal and mixed, of every kind and description whatsoever and wheresoever situate, I give, devise and bequeath to my Trustees named herein, to receive the income therefrom and after paying all lawful debts and expenses pertaining thereto, to pay over the net income derived from the said trust estate to my wife, REBECCA EDELMAN, during her life time. I give my wife, REBECCA EDELMAN, the right at any time and from time to time, beginning with my death and continuing during her life, to appoint the whole or any part of the principal of the trust created by this paragraph to her estate (but not to herself) free of the trust. Any such appointment shall be revocable by her at any time,

---

[1] Petitioner, on reply brief, attempted to raise another issue which was not pleaded and not mentioned either at the hearing or on his principal brief, i.e.: Whether section 2041 (a)(2) of the 1954 Code is unconstitutional. We regard such suggested but unpleaded issue as not being properly before us—in accordance with authorities hereinafter cited.

# 974

and each exercise and each revocation of an exercise of the appointment shall be by written instrument (other than a Will) executed by my wife and delivered to my Trustees during her life. If and to the extent that my wife shall fail effectively to exercise completely such power of appointment, then upon her death the remaining principal of said trust shall be divided in equal shares and paid over to my grandson, SAMUEL EDELMAN and my granddaughter, LEANORE EPSTEIN.

\*     \*     \*     \*     \*     \*     \*

*NINTH:* (a) I hereby nominate and appoint MORRIS A. EDELMAN [a son of Albert and Rebecca] and REBECCA EDELMAN, as Executors of this Will and Trustees of the trust herein created.

Rebecca, upon the death of her husband and the admission of his will to probate, became the life beneficiary of the trust created under said article Fifth of her husband's will; and she also became the donee and holder of the power of appointment over the principal of said trust, which was granted to her under said article. Rebecca did not during her lifetime execute any written instrument exercising this power of appointment, either in whole or in part; she did not release or revoke said power in whole or in part; and petitioner has conceded that at no time during her life did the power lapse. At Rebecca's death, the fair market value of the principal of the trust, with respect to which she had been granted said power of appointment, was $16,658.16 (as determined by respondent in his notice of deficiency, and not here contested by petitioner).

In February 1955, which was about 10 months before Rebecca's death, she was placed in a nursing home in Brooklyn, New York; and she remained there until her death on November 12, 1955. The reason for her being placed in this home was that she had high blood pressure and arteriosclerosis; and that she was disoriented, confused, and totally unable to care for herself. During the period that she was in the nursing home, she was at times coherent and at other times incoherent; also, sometimes she would recognize her grandson when he visited her, and at other times she would not. Said grandson who was a doctor regarded her to be incompetent. She was never adjudicated to be incompetent, and there is no contention or suggestion, and no evidence, that a committee for her was ever appointed.

In the Federal estate tax return filed for Rebecca's estate, the value of the trust property over which said decedent had been granted the above-mentioned power of appointment, was not included in the gross estate. The respondent however, in his notice of deficiency herein, added to the decedent's taxable estate, the said amount of $16,658.16, which he determined to be—

the fair market value of trust corpus with respect to which the decedent had a general power of appointment within the meaning of section 2041 of the Internal Revenue Code of 1954, granted to her under the last will and testament of her deceased spouse, Albert Edelman.

OPINION.

Section 2041(a)(2) of the 1954 Code (the pertinent provisions of which, together with those of the related section 2041(b)(1), are set forth in the margin[2]) provides in substance and material part, that the value of the gross estate of a decedent for Federal estate tax purposes, shall include the value of any property "with respect to which the decedent has at the time of his [or her] death a general power of appointment created after October 21, 1942."

In the instant case, there is no dispute that the decedent, Rebecca, did acquire upon the death of her husband Albert in 1951, and in accordance with the provisions of his last will and testament, not only the right to receive the net income of the trust here involved, during her lifetime; but also the power to appoint, beginning with her husband's death and "continuing during her life," the principal of said trust to her own estate, free of the trust. Also, it is here undisputed, that this power of appointment was created after October 21, 1942; that Rebecca at no time during her lifetime, either disclaimed or renounced, exercised, released, or revoked said power, either in whole or in part; and that at no time during her lifetime, did this power lapse. Accordingly, in determining the applicability of said section 2041(a)(2), the present controversy is narrowed to two underlying questions: (1) Whether said power of appointment was a "general power of appointment" within the meaning of said statutory section; and (2) whether Rebecca had or possessed said power of appointment "at the time of * * * [her] death."

1. As regards the first of these questions, petitioner contends, in substance: (1) That whether the power of appointment involved was a "general power of appointment," must be determined by reference to the law of the State of New York, rather than by construction of

---

[2] SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

\* \* \* \* \* \* \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be included in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

\* \* \* \* \* \* \*

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; * * *

the pertinent provisions of the Federal Revenue Act of 1954; and (2) that said power did not qualify as a "general power of appointment," because Rebecca could thereunder appoint the principal of the trust only to her own estate, and then only by a written instrument (other than a will) executed by her and delivered to the trustees during her lifetime.

We do not agree with these contentions. First, it is to be observed that we are here concerned with the meaning and application of a statute enacted by Congress in the exercise of its plenary power to tax the estates of decedents. As was stated by the Supreme Court in *Burnet* v. *Harmel*, 287 U.S. 103, 110, wherein that Court was dealing with the meaning and application of a Federal income tax statute:

The exertion of that power [to tax] is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. * * * State law may control only when the operation of the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * *

See also *Lyeth* v. *Hoey*, 305 U.S. 188, 193–194, in which the Supreme Court, in construing a provision of a Federal tax statute, said: "We are not concerned with the peculiarities and special incidences of state taxes or with the policies they reflect [relative to the administration of decedent's estate]. * * *" Such principles are, in our opinion, applicable here.

Secondly, it is to be observed that Congress, in the exercise of its plenary power to tax the estates of decedents and in the expression of its will by legislation in that regard, has itself defined the term "general power of appointment" as used in section 2041(a); for in the related provisions of section 2041(b)(1), which refer expressly to said subsection (a), it provided: "The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; * * *"

This definition of the term "general power of appointment," first came into the estate tax law in 1951 as an amendment to section 811(f) of the 1939 Code (see sec. 2, Powers of Appointment Act); and it thereafter was carried into section 2041(b)(1) of the 1954 Code at the time said Code was enacted. The reports of both the Senate and the House on the bill which became the Powers of Appointment Act of 1951 (S. Rept. No. 382, 82d Cong., 1st Sess., p. 3; H. Rept. No. 327, 82d Cong., 1st Sess., p. 4), stated: "It [the bill] provides a test of taxability which is simple, clear-cut, and easy to apply." We think the statute, as enacted, did attain such goal.

The use of the word "or," in the above-mentioned definition contained in section 2041(b)(1), indicates the disjunctive; and accordingly it is our opinion that where a power of appointment over property entitles the donee thereof to exercise the same in favor of any one of those therein specified—i.e., either in favor of himself, *or* his estate, *or* his creditors, *or* the creditors of his estate—such power qualifies under said statutory definition as a "general power of appointment."

We find no ambiguity in the definition which Congress so employed. The two Federal cases which petitioner has cited in support of his contrary position (*Morgan* v. *Commissioner*, 309 U.S. 78 (1940), and *Vaughan* v. *Clauson*, 54 F. Supp. 8 (S.D.Me. 1944), are not apposite; for neither of them involved the construction of section 2041(a)(2) or (b)(1); and both were decided prior to the time when Congress, in the said Powers of Appointment Act of 1951, enacted the above-mentioned definition and also extensively revised the law regarding the taxation of property subject to powers of appointment. Petitioner has cited no case dealing with the construction of the definition in section 2041(b)(1), nor has our search of the authorities revealed any such case. However, the opinion which we have above expressed—that the wording of the definition is in the disjunctive, so that if the power may be exercised in favor of any one of those specified, it is a "general power of appointment"—is supported by the statement of at least two commenters who have discussed said definition: Craven, "Powers of Appointment Act of 1951," 65 Harv. L. Rev. 55, 70; and 2 Mertens, Law of Federal Gift and Estate Taxation, sec. 19.09, p. 519.

We hold that the power of appointment here involved was a "general power of appointment" within the meaning of section 2041(a)(2) and (b)(1) of the 1954 Code.

2. The second question for consideration is, whether Rebecca had or possessed said power of appointment "at the time of her death." Petitioner's position as to this is, in substance: That, although Rebecca acquired said power of appointment under her husband's will and was therein authorized to exercise the same at any time during her life, and although said power was never exercised or released and did not lapse, nevertheless (even if the power did qualify as a "general power of appointment") said power ceased to exist prior to her death because, due to her mental condition during about the last 10 months of her life, neither she nor any committee which might have been (but was not) appointed for her, could have *exercised* such power. Hence, petitioner argues that "decedent's incompetency effected an involuntary relinquishment of the power" under New York law.

Petitioner has cited no New York statute, and no decision either of any New York court or of any other court, which supports his position, as applied to the facts of the instant case. Moreover, as we have hereinabove found as a fact, Rebecca was never adjudicated to be in-

competent; and no committee was ever appointed for her. In the leading New York case of *Finch* v. *Goldstein*, 245 N.Y. 300, 157 N.E. 146, the Court of Appeals of that State said with respect to a person who had become mentally deranged:

Until the appointment of a committee neither the state nor any one else has any power or control over his property or any authority to act in his behalf. He alone remains in possession of his property and can dispose of it. If as a fact he be incompetent at the time he acts, his transactions [in the *exercise* of his property rights] may be set aside at his election either by himself or by a committee subsequently appointed. His acts before the appointment of a committee are thus voidable, not void.

The power of appointment which Rebecca acquired under her husband's will was a valuable property right. And we think that, even if she did at some time prior to her death become mentally deranged, nevertheless under the principle of the above-cited *Finch* case, the fact that she became mentally deranged was, in the absence of any adjudication of her incompetency and in the absence of any appointment of a committee, not sufficient to eliminate or destroy said valuable property right.

In *Estate of Edward L. Hurd*, 6 T.C. 819, affd. 160 F. 2d 610 (C.A. 1), this Court dealt with an estate tax case, wherein the decedent had created a trust under which he as a trustee retained a power to vary the enjoyment of the trust property; and the issue was whether the property subject to such power was includible in the decedent's estate, notwithstanding that prior to his death he had become mentally deranged. In their answering said question in the affirmative, we said:

It is true that in the opinion of his physician the decedent was not capable of making normal decisions respecting property rights at the time of his death or at any time after the fall of 1939. But, decedent was never removed from his trusteeship nor was he ever adjudged mentally incompetent. The design of the revenue act is to include in the estate of a decedent property theretofore disposed of by him but over which he retained a power, such as is here present, at the time of his death. While the matter is one of first impression, we should think that some definitive action might well be necessary to terminate the retained power of the decedent before the purpose of the statute can be defeated. It is not unusual that during a protracted illness one might be incapable, both physically and mentally, of making normal decisions affecting property rights, and yet we would not suppose that the statute does not apply in such cases. * * *

We here hold that Rebecca did have and possess the power of appointment here involved, at the time of her death.

3. As hereinabove mentioned, petitioner attempted to raise on his reply brief, another issue which was not pleaded and was not mentioned either at the hearing or on his principal brief. The substance of this suggested issue is that, even if section 2041 (a) (2) is here applicable, it is unconstitutional on the ground that it imposes a direct

tax without the apportionment required by article 1, section 2, clause 3, and article 1, section 9, clause 4 of the Constitution.

This Court has heretofore held that a constitutional issue which has not been pleaded, will not be considered. *Estate of Louis Solowey*, 15 T.C. 188, 190, affirmed per curiam 189 F. 2d 968 (C.A. 2), certiorari denied 342 U.S. 850. Furthermore, this Court has held repeatedly that it will not consider issues which are raised for the first time on brief. *Irving Segall*, 30 T.C. 734; *Sicanoff Vegetable Oil Corporation*, 27 T.C. 1056, 1066; and *F. H. Philbrick*, 27 T.C. 346, 353. Accordingly, we do not here decide said suggested issue. However, even if such issue were properly before us, it is our opinion that it is without merit.

We sustain the determinations of the respondent in his notice of deficiency herein.

*Decision will be entered for the respondent.*