ESTATE OF JOHN J. ROUND, DECEASED, BOSTON SAFE DEPOSIT AND TRUST COMPANY, JOHN J. ROUND, JR., COEXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 95318.    Filed September 18, 1963.

*James Charles Roy*, for the petitioner.
*John R. Berman*, for the respondent.

974

OPINION

OPPER, *Judge:* Petitioner states the issues in its opening brief as follows:

1. Were the three trusts established in contemplation of death and thus taxable under Sec. 2035 of the Internal Revenue Code of 1954?
2. In respect of the three trusts, did the decedent at date of death possess the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom and thus make the corpora of the trust taxable under Sec. 2036(a)(2) of the Internal Revenue Code of 1954?
3. In respect of the three trusts was the enjoyment thereof subject at the date of death of the decedent to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke and thus make the corpora of the trusts taxable under Sec. 2038(a)(2) of the Internal Revenue Code of 1954?
4. In respect of the three trusts, did the decedent relinquish a power in contemplation of death, thus giving rise to tax under Sec. 2035 of the Internal Revenue Code of 1954?
5. In respect of the three trusts, did the decedent relinquish any power to alter, amend or revoke in contemplation of his death, thus giving rise to tax under Sec. 2038(a)(2) of the Internal Revenue Code of 1954?
6. If the value of the corpora of the trusts at date of death included income undistributed but added to principal, are such amounts of income in any event subject to estate tax?

Respondent having conceded in his brief that the contemplation of death issues have been adandoned, petitioners' sole argument, except as to the subsidiary question of includability of accumulations,[3] is that "The adjudication * * * of the decedent's incapacity * * * extinguished all of the rights, powers and authority of the decedent to act as co-trustee * * * and on the date of death the decedent did not possess any right or power * * * which would make the corpora taxable under either section 2036 or section 2038."

Although the trust instrument provided that "upon the * * * incapacity of [decedent], [the corporate trustee] shall *act as* sole Trustee" (emphasis added), we are given no ground for concluding that decedent's trusteeship was terminated and extinguished by the

---

[3] Petitioner's position on this subordinate issue of whether undistributed and accumulated income should be included in decedent's gross estate, if a power sufficient to cause inclusion is found, will be dealt with later.

conservatorship.[4]  Boston's appointment as conservator of decedent's property may have caused decedent's power as trustee to be held in abeyance; although it must be recalled that the conservatorship was solely for "advanced age" and not for mental incapacity.  But the power still existed although decedent may not have been capable of exercising it.  Otherwise, it would be necessary to read this clause as providing that upon incapacity the corporate trustee shall not only "act as," but shall become, sole trustee.

"The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power."  *Hurd* v. *Commissioner*, 160 F. 2d 610, 613 (C.A. 1, 1947), affirming *Estate of Edward L. Hurd*, 6 T.C. 819 (1946).  On the present record, this situation is directly controlled by that case.  In *Estate of Rebecca Edelman*, 38 T.C. 972 (1962), we said, at page 978:

In *Estate of Edward L. Hurd*, 6 T.C. 819, affd. 160 F. 2d 610 (C.A. 1), this Court dealt with an estate tax case, wherein the decedent had created a trust under which he as a trustee retained a power to vary the enjoyment of the trust property; and the issue was whether the property subject to such power was includible in the decedent's estate, notwithstanding that prior to his death he had become mentally deranged.  In their answering said question in the affirmative, we said:

"It is true that in the opinion of his physician the decedent was not capable of making normal decisions respecting property rights at the time of his death or at any time after the fall of 1939.  But, *decedent was never removed from the trusteeship nor was* he ever adjudged *mentally* incompetent.  The design of the revenue act is to include in the estate of a decedent property theretofore disposed of by him but over which he retained a power, such as is here present, at the time of his death.  While the matter is one of first impression, we should think that some definitive action might well be necessary to *terminate* the retained power of the decedent before the purpose of the statute can be defeated.  It is not unusual that during a protracted illness one might be incapable, both physically and mentally, of making normal decisions affecting property rights, and yet we would not suppose that the statute does not apply in such cases. * * * [Emphasis added.]"

To this it may be added that the State court decision, which we accept at face value, adjudicated decedent's capacity to file the petition for conservatorship.  He would hence have had capacity to resign at that time had it been his intention to abandon the trusteeship.  Whether this would then have constituted a relinquishment of his power within 5 months of his death so as to bring section 2035 into play we need not speculate.  It suffices that we know he did not resign as trustee, was not removed, was never declared mentally incompetent, and the trusts were never amended.  Under these facts there was lacking here, as in *Hurd*, "some definitive action * * * to terminate the retained power."

---

[4] Mass. Ann. Laws, ch. 201, sec. 16.

, Any question as to the existence of, as distinguished from ability to exercise, a power "at the date of [decedent's] death" [5] which would require the inclusion of the corpora in the gross estate under section 2038 would then be limited to the effect of the retained power. But that is answered [6] by the Supreme Court's decision in *Lober* v. *United States*, 346 U.S. 335 (1953). There, as in the present situation, the trust instrument allowed the trustees to advance or pay over portions of the principal held for the income beneficiary.[7] In finding a power to "alter, amend, or revoke" under section 2038, the Court declared, at page 337:

the * * * beneficiaries * * * were granted no "present right to immediate enjoyment of either income or principal." * * * To get this full enjoyment they had to wait until they reached the age of twenty-five unless their father sooner gave them the money and stocks by terminating the trust under the power to change he kept to the very date of his death * * *. "A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which [section 2038] requires in order to avoid the tax." *Commissioner* v. *Holmes* [326 U.S. 480] at 487.

See also *Estate of Carrie Grossman*, 27 T.C. 707 (1957).

The September and December trusts in the case before us gave the trustees the power to invade. A power may be limited by an external standard, such as support, so as not to constitute an unlimited power to invade corpus,[8] *Jennings* v. *Smith*, 161 F. 2d 74, 77 (C.A. 2, 1944); but cf. *State Street Trust Co.* v. *United States*, 263 F. 2d 635 (C.A. 1, 1959), but "The standard, as a limitation on the power, [must be] specific. Here there is no specificity but the exercise of the power is left to the unbridled discretion of the settlor. The alleged limitation furnished no guide as to what constituted 'a special emergency.'" *Michigan Trust Co.* v. *Kavanagh*, 284 F. 2d 502, 505 (C.A. 6, 1960).

There is even less difficulty in finding an includable power under section 2036 when we deal with petitioner's argument that the con-

---

[5] The situation in this respect differs from *Estate of Cyrus C. Yawkey*, 12 T.C. 1164 (1949). There the question was whether the power existed and it was held that it had never come into effect. Here, the only question is the extinguishment of an admitted preexisting power. See *Hurd* v. *Commissioner*, 160 F. 2d 610 (C.A. 1, 1947).

[6] Respondent relies heavily on the general powers contained in par. 9, which, it is to be noted, in at least one of the trusts, were not fiduciary powers but were retained by decedent in his individual capacity. See *State Street Trust Co.* v. *United States*, 263 F. 2d 635 (C.A. 1, 1959). But we prefer to rest our conclusion on the specific reservations included in the trusts.

[7] The August trust included the following power:

"The Trustees may in their sole discretion pay over to any of said children any part or all of the share held for his or her benefit if at any time in their sole discretion they shall deem such a distribution desirable."

[8] The September and December trusts included the following power:

"The said Trustees may also, in case of emergency, from time to time and upon such conditions as in their sole discretion they shall determine to be for the best interests of said children, advance such part of the principal of their respective shares as they, in their sole discretion shall determine to be reasonably necessary or desirable."

servatorship serves to deny the applicability of that section. It "uses the language 'for his life or for any period not ascertainable without reference to his death * * * ' whereas section [2038(a)(2)] employs the simple concept 'at the date of his death.' " *Estate of Cyrus C. Yawkey*, 12 T.C. 1164. 1171 (1949). Since, as we have said, the trust instruments provided that upon incapacity the corporate trustees shall act as sole trustee, it is inescapable that upon the recovery of capacity decedent would resume his duties as trustee. See *Hurd* v. *Commissioner, supra;* Mass. Ann. Laws, ch. 201, sec. 18. As a result, it was uncertain until decedent's death whether he had regained capacity and the ability to exercise the powers granted the trustees under the several trusts.

In two of the trusts (September and August), the trustees had the express power to withhold and accumulate income.[9] There is no suggestion that in this respect the three trusts should be treated differently. In the third trust (December), despite the absence of any express power, more than $20,000 in undistributed income was accumulated to principal.[10] And the instrument throughout refers to "accumulations." The practical construction of the instrument by the parties to it[11] leaves no doubt that the power to accumulate was implicit. There was thus as to all three trusts a "right to shift economic benefits and enjoyment from one person to another, which is * * * contemplated by the phrase 'to designate the persons who shall possess or enjoy * * * the income' from the property." *Estate of Milton J. Budlong*, 7 T.C. 756, 763 (1946), affirmed this issue sub nom. *Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1, 1947); *Estate of Cyrus C. Yawkey, supra*. The power to accumulate was in addition to the power to invade corpus, which has also been held to be a "right * * * to designate the persons who shall possess or enjoy the property or the income therefrom" under section 2036. *Struthers* v. *Kelm*, 218 F. 2d 810 (C.A. 8, 1955).

We are accordingly of the opinion that at the date of his death decedent possessed the power in conjunction with others to alter, amend, or revoke the trusts he had established; and that at a time not ascertainable without reference to his death he had a similar right to designate the beneficiaries of the enjoyment of the property

[9] "PROVIDED, HOWEVER, that during the lifetime of said [decedent] the Trustees may, if the guardians of any of said children shall desire, withhold the actual payment of income hereunder to any of said children or their guardians, adding such income from time to time to the principal of their respective shares."

[10] In this regard State's trust officer responsible for the December trust testified as follows:

"Q. And similarly, on the second trust. that dated December 31, 1935, do the records of the State Street Trust Company indicate that there were various amounts of accumulated income to principal in the amount of $20,588.03?

"A. That is correct."

[11] *Seward's Estate* v. *Commissioner,* 164 F. 2d 434 (C.A. 4, 1947), affirming a Memorandum Opinion of this Court; *Atwood* v. *City of Boston*, 310 Mass. 70, 37 N.E. 2d 131 (1941); see *Smith* v. *Paquin*, 325 Mass. 231, 90 N.E. 2d 1 (1950).

or its income. The transferred property is hence includable in the gross estate under both sections 2036 and 2038.

Even so, petitioners contend that there is a subsidiary question whether the accumulations were "transferred" and hence that the value of the trusts to be included in decedent's gross estate should not include undistributed and accumulated income which has been added to the principal of the three trusts. With this we cannot agree.

The net estate upon the transfer of which the tax is imposed is not limited to property that passes from decedent at death. [Section 2038] requires to be included in the calculation all property previously transferred by decedent, the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another. [*Porter* v. *Commissioner*, 288 U.S. 436 (1933).]

Decedent's power to alter, amend, or revoke, and his right to designate the beneficiaries "extended not only to the property originally transferred to the trusts, but also to the properties acquired with trust income." *Estate of E. A. Showers*, 14 T.C. 902, 919 (1950), remanded by stipulation (C.A. 5, 1951). Thus, whether we view the transfers as incomplete until the date of death, *Estate of E. A. Showers, supra; Estate of Myrtle H. Newberry*, 17 T.C. 597 (1951), reversed on other grounds 201 F. 2d 874 (C.A. 3, 1953), or whether we consider the withholding of the income to have itself constituted a transfer, see *Estate of Cyrus C. Yawkey, supra*, the accumulations are also includable in decedent's gross estate.

*Decision will be entered for the respondent.*