Estate of Paul Loughridge, Deceased, Marjorie Mead Loughridge, Executrix, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 9780. Promulgated December 6, 1948.

*Robert G. Bosworth, Esq.*, and *Lewis A. Dick, Esq.*, for the petitioner.

*Harlow B. King, Esq.*, for the respondent.

974

## OPINION.

Tyson, *Judge*: The first issue herein involves the children's trust as last amended on December 27, 1935, and the primary question of whether the value of the entire corpus of that trust, stipulated to be in the amount of $214,572.13 at date of decedent's death, or any portion thereof, is includible in the decedent's gross estate. The pertinent provisions of section 811 of the Internal Revenue Code are set out in the margin.[1]

In the deficiency notice respondent determined that the entire corpus of the children's trust is includible in decedent's gross estate under the provisions of section 811 (c) and 811 (d), but the parties herein have stipulated that the "transfers made by decedent to the Children's Trust

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*     \*     \*     \*     \*     \*     \*

(c) Transfers in Contemplation of, or Taking Effect at Death.—\*  \*  \*

(d) Revocable Transfers.—

\*     \*     \*     \*     \*     \*     \*

(2) Transfers on or prior to June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph ;

(3) Date of existence of power.—For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose if the notice has not been given, or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given or the power exercised, on the date of his death.

on July 16, 1929, January 1, 1935 and November 15, 1935" and also the trust amendment of December 27, 1935, "were not made by decedent in contemplation of death," and we have so found.

On the remaining question involved in the first issue, both parties cite, as the particularly pertinent provision, that portion of section 811 (d) (2) which provides that the value of the gross estate of the decedent shall be determined by including the value, at the time of his death, of property transferred prior to June 22, 1936, by decedent in trust "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."

Respondent contends that at date of his death decedent had the power to alter the trust within the meaning of section 811 (d) (2) in that he, the donor, reserved the power at any time to become trustee and, under the power specifically given the trustee, could terminate the trust in whole or in part, thereby altering each minor beneficiary's interest in the income and corpus of the trust from one of future enjoyment to one of immediate ownership and enjoyment.

Petitioner contends that the decedent had no power at the date of his death to change the enjoyment of the trust property within the intendment of section 811 (d) (2), for the reasons: (1) That, even if, under the decedent's reserved power to remove the trustee, he could have designated himself as trustee and in the latter capacity could have terminated the trust, there did not exist "at the date of his death" any power to alter, but only a right to acquire such a power; and (2) that the decedent's acquisition and exercise of a power to terminate could not have changed the enjoyment of the minor beneficiaries at date of death. In the alternative, petitioner contends that Mel H. Loughridge, and not the decedent, was the transferor of the property originally transferred in trust on July 16, 1929, so that at least three-fourths of the corpus of the trust is not includible in decedent's gross estate, even if he had a power within the meaning of section 811 (d) (2).

As to the alternative contention, it is our opinion that the facts herein clearly establish that the decedent made the transfers to the children's trust, including the one on July 16, 1929, within the meaning of section 811 (d) (2). The deed of gift by Mel H. Loughridge, dated July 15, 1929, specifically gives, grants, and conveys certain securities to her two sons, Paul and William, their heirs, and assigns forever. The fact that Mel H. Loughridge expressed, in that deed, her request that Paul (and William if he should later marry and have children) use such part of his gift as he should determine to create a trust for his children, did not change the character of the gift as absolute, since it is obvious that whether such request was acceded to

or not was entirely discretionary with Paul or William, as the case might be. It is our opinion that in the declaration of trust dated July 16, 1929, Paul Loughridge alone was the donor of the securities thereby transferred in trust. Having concluded that the transfers in trust were made by the decedent, the next question is whether the enjoyment thereof was subject at date of death to any change through the decedent's exercise of a power to alter, amend, or revoke within the meaning of that section. This question turns upon the character of the beneficiaries' right of enjoyment and of the decedent's reserved powers under the provisions of the December 27, 1935. amended trust instrument summarized in our findings of fact.

Aside from any question as to what technical legal estate each of decedent's minor children had under the provisions of the trust at the date of decedent's death; that is, whether regarded as a vested interest subject to divestiture by reason of various contingencies, including the beneficiary's death, it is clear that they did not have a present right of "enjoyment" of either the income or principal of the trust fund. Termination of the trust under the trustee's reserved power to do so at any time would have changed the right of each of the decedent's minor children from one of future enjoyment to one of immediate ownership in fee simple in that, during continuation of the trust, each child's enjoyment of the income of his share was postponed until and dependent upon his attaining 21 years of age and his enjoyment of the corpus of his share was postponed until termination of the trust at a future date upon the event of the younger of Charles and Ruth attaining age 40 or the death of the survivor of those 2 children before attaining age 40, whereas termination under the reserved power would have freed each child's share of the trust and resulted in the immediate transfer to him of fee simple ownership of both corpus and income, together with the present enjoyment thereof. Also, termination of the trust would have cut off and shifted the contingent interests enumerated in the trust instrument, including interests in the accumulated income of the share of any child who died before attaining age 21; in the current income of the share of any child who died without issue after attaining age 21 and during continuation of the trust; and in the remainder interest of decedent's wife or her estate in the share of any child who died without exercising his or her power of appointment and without being survived by a spouse and/or issue.

In *Commissioner* v. *Estate of Holmes*, 326 U. S. 480, rehearing denied, 327 U. S. 813, it was held that the term "enjoyment" as used in section 811 (d) (2) is not a term of art, but one connoting substantial present economic benefit, rather than technical vesting of title or estate, and it was further held that a power to *terminate* the contingencies upon which the right of enjoyment rests, so as to make certain that present enjoyment becomes the right of a beneficiary who may never

have it if the power is not exercised, is a power which affects not only an acceleration of the time of enjoyment, but also the very right, itself, of enjoyment, and is a power "to alter, amend, or revoke" within the meaning of that section.

There is a variation as between the *Holmes* case and the instant case in the wording of the reservation of the power to terminate. There the donor was also the trustee, and the Court concluded, upʹ ι the language of the indenture which was not wholly clear, that it could not say that the donor did not reserve the power to himself as donor and thus found it unnecessary to rule on a contention that the power was not within the meaning of section 811 (d) (2) because reserved to the decedent not in the capacity of donor, but only in that of trustee. However, in the following authorities it is made clear that, had the decedent been trustee at the date of his death, with the power to alter or terminate, such power would be within the purview of section 811 (d) (2), just as it would have been had such power been reserved by decedent to himself as grantor. *Welch* v. *Terhune*, 126 Fed. (2d) 695; certiorari denied, 317 U. S. 644 (C. C. A., 1st Cir., 1942); *Union Trust Co. of Pittsburgh* v. *Driscoll*, 138 Fed. (2d) 152; certiorari denied, 321 U. S. 764 (C. C. A., 3d Cir., 1943); *Estate of John Moir*, 47 B. T. A. 765; *Estate of Albert E. Nettleton*, 4 T. C. 987; *Estate of Edward L. Hurd*, 6 T. C. 819; affd., 160 Fed. (2d) 610; *Estate of Charles B. DuCharme*, 7 T. C. 705; affirmed on this point, 164 Fed. (2d) 959, 963; and *Estate of Milton J. Budlong*, 7 T. C. 756; affirmed on this point, 165 Fed. (2d) 142. Under the *Holmes* and the other cases cited, it is not to be questioned that, had the decedent herein been the trustee at date of his death, he would have had the power to change the beneficiary's enjoyment within the meaning of section 811 (d) (2).

While the decedent was not trustee at the date of his death, nevertheless, except for the fact that there could be no assurance of securing the resignation of the trustee until not less than thirty days after the delivery to him of a notice requiring such resignation, the decedent had the full power at the date of his death to require the resignation of the trustee, to name himself as successor trustee, and then to immediately alter the trust in respects mentioned above through termination thereof. More briefly stated, it may be said that, except as limited by the necessity of required notice, the decedent, at the date of his death, had the power to take all necessary steps to alter the trust by terminating it. With regard to the required notice, we think the situation is covered by section 811 (d) (3), *supra*, which states, in material part, that "For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice * * *"; and that consequently the provision in the trust instrument as to the required notice is imma-

terial. So we conclude that at the date of his death decedent had the power to alter the trust within the provisions of section 811 (d) (2), *supra*.

In the instant case, what was said in the *Holmes* case, *supra*, is apropos: "A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to re-take has not divested himself of that degree of control which section 811 (d) (2) requires in order to avoid the tax."

On the first issue we sustain the respondent's determination that the value of the entire corpus of the children's trust in the amount of $214,572.13 is includible in the decedent's gross estate.

The second issue involves the question of whether all or any part of the value (amounting to $220,365.54 at date of decedent's death) of the property received by decedent from the Fred H. Harmon trust and included in the decedent's gross estate, should be allowed as a deduction as previously taxed property under section 812 (c) of the Internal Revenue Code, the pertinent parts of which are set out in the margin.[2]

The issue involves no question of whether the entire value of such trust property is properly included in the decedent's gross estate, but solely the question of the allowance or disallowance of the claimed deduction, which, under the cited section, may be allowed only where a Federal estate tax was finally determined and paid by or on behalf of the prior decedent's estate and, further, only to the extent that the value of such property was included in the gross estate of the prior decedent.

It is axiomatic that deductions are matters of legislative grace and that a taxpayer seeking a deduction must meet all of the requirements prescribed by the statute granting the deduction claimed. The statutory provision involved grants a deduction for the purpose of exempting the same property from being twice used as a measure of estate

---

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(c) PROPERTY PREVIOUSLY TAXED.—An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, \* \* \* where such property can be identified as having been received by the decedent \* \* \* from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. Property includible in the gross estate of the prior decedent under section 811 (f) \* \* \* received by the decedent described in this subsection shall, for the purposes of this subsection, be considered a bequest of such prior decedent \* \* \* This deduction shall be allowed only where \* \* \* an estate tax imposed under this chapter or any prior Act of Congress, was finally determined and paid by or on behalf of \* \* \* the estate of such prior decedent, \* \* \* and only in the amount finally determined as the value of such property in determining the value of \* \* \* the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate \* \* \*

tax where such property is included in two different gross estates of two different decedents within five years.

A decision of this issue in favor of petitioner would necessarily require proof that all or some part of the value of the Harmon trust property received by petitioner's decedent was included in the prior decedent's estate and that the estate tax thereon was paid by that estate; and the burden of supplying this proof rests upon petitioner. In our opinion petitioner has failed to meet this burden.

The facts herein disclose that Fred H. Harmon, grantor of the trust involved, predeceased the petitioner's decedent within less than five years; that the Harmon estate tax return stated that the entire trust assets had a value of $430,716, but only $26,733.27 thereof was included in the reported gross estate of $71,066.14 for tax purposes and the estate tax computed and paid amounted to $97.74; that the respondent thereafter determined a deficiency of $73,563.54 by sole reason of including in Harmon's gross estate the entire value of the trust property; that the Harmon estate filed a petition in this Court contesting such deficiency; that in such proceeding the parties stipulated, *inter alia*, that the net estate tax liability was $13,773.44; and that a decision of this Court was entered in accordance with the stipulation. There is no stipulation or other evidence in this record as to what portion of the value of the trust property was included in Harmon's estate for the purpose of computing the amount of $13,-773.44 estate tax finally determined pursuant to stipulation and paid by or on behalf of the estate of Harmon, the prior decedent. However, the foregoing facts speak for themselves in showing definitely that the entire reported value of $430,716 of the trust property was not included in Harmon's gross estate for tax purposes, for if it had been the estate tax liability would have amounted to $73,661.28, the tax of $97.74 reported plus the asserted deficiency of $73,563.54. So far as the foregoing facts show, it would seem apparent that some portion of the value of the trust property was included in Harmon's gross estate for the purpose of computing the estate tax liability of $13,773.44, but the amount of such portion and the extent to which it included the value of decedent's interest in the trust property are not determinable from the record in this proceeding.

We are not here concerned with the fact that the Harmon estate reached a stipulated settlement of a proceeding involving the question of the inclusion of the value of the entire trust property in that estate. The essential matter to be determined is whether petitioner has met the requirements of the statute for the deduction sought; namely, was this decedent's share of the Harmon trust property valued at $220,-365.54, or any identifiable portion thereof, actually included in the Harmon estate for tax purposes and the tax thereon finally deter-

mined and paid by or on behalf of that estate. On this record the answer must be in the negative.

Since, as above stated, some portion of the value of decedent's interest in the Harmon trust property was included in the prior decedent's gross estate for tax purposes, but the amount thereof is not shown, the respondent has failed to sustain his burden of proof on his affirmative allegation that in his determination he erred in the amount which he allowed the decedent's estate as a deduction for previously taxed property in the estate of a prior decedent. Accordingly, respondent's affirmative plea for an increase of $18,709.45 in the asserted deficiency is denied.

On the second issue, we sustain the respondent's determination.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

TURNER, *J.*, dissenting: I am unable to agree with the conclusion that any part of the estate of Paul Loughridge was included in the gross estate of Fred H. Harmon for Federal estate tax purposes. It is true that the respondent determined a deficiency against the estate of Fred H. Harmon by including as a part of the taxable gross estate the full value of the Fred Harmon trust corpus. The estate filed a petition with this Court, contesting the inclusion of the corpus of that trust, both with respect to the Loughridge half and the McIllvaine half. In advance, however, of the date set for the trial of the proceeding in the Tax Court, representatives of the Harmon estate and of the respondent met in conference to consider possible stipulation of facts or settlement of all the questions of liability of the Harmon estate for the deficiency determined. After reaching an understanding as to the part of the trust corpus which had been contributed by Fred Harmon after March 3, 1931, and some discussion and agreement with respect to state inheritance tax paid, the conference turned its attention to the remaining corpus of the Harmon trust, consisting of the McIllvaine half and the Loughridge half. At the outset, the representatives of the respondent conceded that no part of the property representing the Loughridge half was includible in the taxable gross estate of Fred H. Harmon, and, by reason of that concession, any question of the inclusion of such part of the Harmon trust corpus in the taxable gross estate of Fred Harmon was eliminated. The representatives of the respondent advised the representatives of the Harmon estate that they could not concede that the McIllvaine half of the trust did not properly constitute a part of the taxable gross estate, and all discussion thereafter turned to the merits of that proposition. The representatives of the respondent advised the representatives of

the Harmon estate that the deficiency in tax remaining after the elimination of the Loughridge part of the trust corpus had been computed and found to be $27,351.59. The representatives of the Harmon estate made no definite proposal as to settlement of the estate tax liability remaining after such elimination of the Loughridge half of the trust corpus from the taxable gross estate, but indicated that a proposal might be made later. About a week or ten days after the conference, a representative of the estate who had participated in the conference telephoned one of the respondent's representatives and advised him of a willingness to settle for one-half of the deficiency of $27,351.59, which would be due if the McIllvaine half of the trust corpus remained in the taxable gross estate. Representatives of the respondent, after consideration, accepted the proposal and the deficiency of $13,675.70, representing one-half of the total deficiency attributable to the inclusion in the taxable gross estate of Fred H. Harmon of the McIllvaine half of the trust corpus, was agreed upon and the decision of the Tax Court was entered pursuant thereto. On such facts, it may not correctly be said that any part of the Paul Loughridge estate constituted prior taxed property of the estate of Fred H. Harmon.

The facts above set forth definitely appear from the testimony of Luther Craft, technical staff representative of the respondent, who, with Harold H. Hart, represented the respondent at the conference with the representatives of the Fred H. Harmon estate, as above set forth. Craft's testimony setting forth the above facts is at no place contradicted by the testimony of any witness appearing in the instant proceeding.

In such situation, I respectfully note my dissent from the conclusion of the majority of the Court that part of the estate of Paul Loughridge constituted property previously taxed for Federal estate tax purposes as a part of the estate of Fred H. Harmon.

---

BLACK, *J.*, dissenting: I dissent from the majority opinion wherein it includes as a part of decedent's gross estate the value of the corpus in the children's trust. This action of the majority opinion is taken on the authority of the Supreme Court's decision in *Commissioner* v. *Holmes Estate*, 326 U. S. 480. The facts in the *Holmes* case were briefly summarized in the Supreme Court's opinion as follows:

Each trust was to continue for a period of fifteen years, unless earlier terminated under power reserved to the grantor, or for a longer term on specified conditions summarized below. But the grantor reserved to himself during his. lifetime the power to terminate any or all of the trusts and distribute the principal, with accumulated income, to the beneficiaries then entitled to receive it. He retained no power to revest in himself or his estate any portion of the corpus or income.

Unlike the *Holmes* case, in the instant case the decedent retained no power as grantor to terminate the trust and accelerate the enjoyment thereof to the beneficiaries. At the time of decedent's death that power was vested alone in the trustee, the United States Trust Co. of New York, a corporate trustee. It is true that decedent reserved in the trust the right to require the resignation of the trustee, upon the giving of due notice, and upon receiving such resignation could have then appointed himself as trustee and, by doing so, would have thus acquired the right to terminate the trust. But I am unable to agree that these powers bring the instant case within the ambit of the *Holmes* case, where the decedent died possessed of the right as grantor-trustee to terminate the trusts. The transfer here involved was made prior to June 22, 1936, and, consequently, the applicable subdivision of section 811 is subdivision (d) (2), as the majority opinion holds. However, it makes very little difference whether it be subdivision (1) or (2), because the decision of the Supreme Court in the *Holmes* case rendered those two subdivisions virtually synonymous so far as any issue in the case at bar is concerned.

Section 811 (d) (2) provides for the inclusion within the decedent's gross estate of property previously transferred "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *." The issue, therefore, as to whether the value of the property comprising the children's trust should be included in the gross estate of decedent is whether *at the date of his death* the decedent possessed any power to change the enjoyment of the trust property. The use by Congress of the phrase "at the date of his death" is significant, and its restrictive effect must, in my opinion, be kept in mind. The fact that the statute is thus intentionally restrictive as to time is further emphasized by the provisions of the next subdivision (section 811 (d) (3)) where a situation which might otherwise result in exclusion of the property is expressly brought under the terms of the definition, for the statute provides that the power "shall be considered to exist on the date of decedent's death even though the exercise of the power is subject to a precedent giving of notice." The inclusion of the limiting phrase "the date of his death" requires, therefore, a realistic analysis of the power reserved by decedent as it existed in the case at bar on February 26, 1943, the date of the death of the decedent. That is the time certain fixed by statute.

Under paragraph twelfth of the trust instrument, as amended December 27, 1935, it was provided,

The trustee, upon written notice from Paul Loughridge, shall, or may if it so desires, upon written notice addressed to him (or if he be not living, to Marjorie Mead Loughridge), resign as Trustee hereunder; such resignation shall become

effective on the day specified in the notice from Paul Loughridge or that given by the Trustee, which shall be not less than thirty days subsequent to the delivery of such notice to the Trustee, or the mailing of such notice by the Trustee.

On February 26, 1943, therefore, the decedent had only the power to cause the trustee to resign, which resignation could not become effective for 30 days. This 30-day period is a grace period so to speak; it is *not* a prerequisite precedent notice as spoken of in 811 (d) (3). An analysis of the reserve power, therefore, shows that at the date of his death the decedent, having only the reserved power to remove or force the resignation of the trustee, had at most the power to appoint himself trustee and in that manner *to acquire* the power to terminate, *but he had no power to terminate at the date of death.*

Therefore, it seems to me that the *Holmes* case, *supra*, where the decedent unquestionably had such a power at the date of his death, is essentially different in its facts from the facts here and is not controlling. I think the majority opinion errs wherein it holds the corpus of the children's trust includible in decedent's estate.

Van Fossan and Murdock, *JJ.*, agree with this dissent.