ESTATE OF FREDERICK M. KASCH, DECEASED, HELEN L. KASCH, EXECUTOR UNDER THE WILL, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59815, 59816, 59817, 59818. Filed April 23, 1958.

*William A. McSwain, Esq.*, and *James O. Silliman, Esq.*, for the petitioners.

*Don S. Harnack, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in estate tax of $30,972.55, and a like amount, plus interest as provided by law, as a transferee liability against each of the three transferees.

Several errors were assigned but evidence has been offered only as to the following error:

The Commissioner has erred in including in the taxable estate the sum of $152,894.10, or any part thereof, representing the fair market value as of the date of decedent's death of a trust created by decedent on December 30, 1938.

The proceedings were consolidated for trial and opinion.

[1] Transferee proceedings of the following petitioners are consolidated herewith: Helen L. Kasch, Transferee and Beneficiary, Docket No. 59816; Continental Illinois National Bank and Trust Company of Chicago, Transferee and Trustee, Docket No. 59817; and The First National Bank of Chicago, Transferee and Trustee, Docket No. 59818.

The three transferee-petitioners concede transferee liability for any deficiency in estate tax finally determined against the Estate of Frederick M. Kasch, deceased, plus interest as provided by law.

### FINDINGS OF FACT.

Most of the facts were stipulated and they are so found.

Frederick M. Kasch died testate, a resident of Chicago, Illinois, on December 6, 1952. He left surviving him his widow, Helen L. Kasch, four children, Margaret K. Cassin, Helen-Marie K. Tobinson, Frederick W. Kasch, and Emily D. Kasch, and eight grandchildren.

Helen L. Kasch, decedent's widow, is the "executor" (so named in decedent's will) of the decedent's estate. An estate tax return showing an estate tax liability of $2,026.63 was filed by the executor with the district director of internal revenue in Chicago, Illinois. The amount of $2,026.63 was paid by the executor prior to the mailing of the deficiency notice and the three notices of transferee liability.

Helen L. Kasch received or had on December 6, 1952, property which was included in the gross estate of the decedent for estate tax purposes. The property had a value at that time in excess of the proposed deficiency in estate taxes, plus interest as provided by law.

Continental Illinois National Bank and Trust Company of Chicago, on or about November 12, 1952, became trustee of a trust the corpus of which was includible in the gross estate of the decedent for estate tax purposes and which property had a value at the date of decedent's death in excess of the proposed deficiency in estate taxes, plus interest as provided by law.

The First National Bank of Chicago, on or about December 30, 1938, became a cotrustee of a trust the corpus of which is alleged by respondent to be includible in the gross estate of the decedent for estate tax purposes and which property had a value at the date of decedent's death in excess of the proposed deficiency in estate taxes, plus interest as provided by law.

By reason of the distributions referred to in the three previous paragraphs, the estate of Frederick M. Kasch is without funds or assets with which to pay the proposed deficiency in estate taxes, plus interest as provided by law, and is unable to pay the same.

The above-mentioned trust created on December 30, 1938, by the decedent was for the benefit of his wife and his descendants, per stirpes. It was declared to be irrevocable. It was to terminate on the last to occur of (1) the death of his wife, Helen L. Kasch, or (2) 7 years from the date of the trust. For the first 21 years, unless sooner terminated, 20 per cent of the net income of the trust was to be paid on each December 20 to the then living lawful descendants of the donor, per stirpes, and 80 per cent was to be accumulated and added to

the principal of the trust fund. Thereafter all of the net income was to be paid to such lawful descendants then living, per stirpes. Upon termination of the trust, the entire trust fund then remaining, together with all accumulations, shall be distributed to the then living lawful descendants of the donor, per stirpes.

The trustees of the December 30, 1938, trust were the donor, Frederick M. Kasch, and the First National Bank of Chicago. The latter was to act alone for the trustees on matters requiring ministerial acts only and the donor was to act on all matters that required the exercise of discretion and judgment. The donor continued to act as the individual trustee until his death.

Article II (b) of the December 30, 1938, trust provided in part:

(b) Whenever and as often as the Donor's wife, HELEN L. KASCH, shall certify in writing to the Trustees that her income from all other sources for the calendar year in which the request is made as reasonably anticipated shall appear to be less than a sum equal to the applicable percentage of the value of the Trust Fund as last appraised as hereinafter set forth, the Trustees shall, when so requested by HELEN L. KASCH and to the extent requested by her distribute to her in such calendar year from the principal of the Trust Fund an amount equal to the difference by which her total anticipated income for such calendar year is less than the specified percentage of the value of the trust as last appraised in accordance with the following schedule:

10% of the Trust Fund, when the first request is made;

*     *     *     *     *     *     *

20% of the Trust Fund, when the tenth and all subsequent requests are made;

provided, however, that if, in the sole opinion of the Trustees, said estimate of income shall be unreasonably low, they may, in their sole discretion, increase it, but they shall not be liable to her or to any other beneficiary of this Trust Estate for failure to accept her estimate or for failure to increase it. * * * the Trustees' decision as to the amount and manner of payment shall be final and conclusive.

Article III (c) of the December 30, 1938, trust provided as follows:

(c) If at any time or from time to time, in the judgment of the Trustees, the aggregate of the income and principal payable hereunder, if any, and income accruing from all other sources including distributions, if any, under paragraph (b) of Article II hereof—

(1) to the Donor's said wife or to any beneficiary, shall be insufficient to provide for the proper care, support and medical attention of such wife or beneficiary during the period of any illness or other incapacity;

(2) to any child of the Donor, shall be insufficient to enable him or her to provide for the proper care, support and medical attention of any grandchild of the Donor, then dependent upon him or her, during the period of such grandchild's illness or other incapacity;

the Trustees, *in their uncontrolled discretion*, may apply thereto or pay to such beneficiary for such purpose a portion of the principal then held for the benefit of such beneficiary; provided that in no case shall the total of such payments to a child of the Donor, made in any one calendar year to any such child exceed two per cent (2%) of the value of the Trust Fund as last appraised for any one of the first three years in which payments are made, or three per cent (3%) of the value of the Trust Fund as last appraised for each of not more than five additional years in which payments are made, *and provided, further, that during*

*the lifetime of the Donor no such principal shall be distributed to any beneficiary without his prior written consent.* All payments hereunder to any beneficiary other than the Donor's said wife shall be treated and charged as an advancement, without interest, against and shall be deducted from the principal payable and distributable to such beneficiary upon the termination of this trust or to his or her lawful descendants, if he or she shall die prior to the final distribution of the Trust Fund. [Emphasis supplied.]

At no time during the period commencing December 30, 1938, and ending December 6, 1952, did Helen L. Kasch certify in writing to the trustees that her income from all other sources during any calendar year appeared to be less than a sum equal to 10 per cent of the value of the trust fund, and at no time during that period did Helen L. Kasch request any distribution of principal from the trust fund pursuant to article II (b) of the trust agreement. No distributions under article II (b) of the instrument or any other article were made to Helen L. Kasch during that period.

No distribution of trust corpus was made to any of the beneficiaries named in the trust agreement or to any child of the decedent during the period commencing December 30, 1938, and ending December 6, 1952.

No request for a distribution of principal was made by any beneficiary named in the trust instrument, or any child of the decedent, or by anyone acting on behalf of the beneficiaries or children, during the period commencing December 30, 1938, and ending December 6, 1952.

At no time during the period commencing December 30, 1938, and ending at the death of the decedent, December 6, 1952, did Helen L. Kasch suffer any period of illness or other incapacity.

At no time during the period commencing December 30, 1938, and ending December 6, 1952, did any child or grandchild of the donor suffer any period of illness or other incapacity.

Article IV (d) (1) of the December 30, 1938, trust provided as follows:

(d) Until such time as Frederick M. Kasch shall cease to be the individual co-trustee in the manner hereinafter provided, he alone and from and after his death, resignation or other inability to act as a Trustee, the Trustees from time to time acting shall have the following powers, authorities, and obligations, all of which, when done by him shall nevertheless be done for and on behalf of the trust estate and the respective beneficiaries thereof:—

(1) Subject to the provisions and limitations herein expressly set forth, he and his successors shall have, in general the power to do and perform any and all acts and things in relation to the trust fund in the same manner and to the same extent as an individual might or could do with respect to his own property. No enumeration of specific powers herein made shall be construed as a limitation upon the foregoing general power, nor shall any of the powers herein conferred upon the Trustees be exhausted by the use thereof, but each shall be continuing.

By article V of the December 30, 1938, trust instrument, the donor reserved the right at any time to remove the corporate trustee and to fill any vacancy in the office of the trustees, whether corporate or individual.

In the estate tax return filed by the executor, no value was included in the gross estate by reason of the trust created on December 30, 1938. The respondent determined that $152,894.10 should be included by reason of this transfer and, in a statement attached to the deficiency notice, the respondent explained the adjustment as follows:

It is determined that the fair market value, to wit, $152,894.10 of a trust created by decedent and evidenced by written agreement, dated December 30, 1938, is includible in decedent's gross estate as a transfer under which, at date of decedent's death, decedent, within the meaning of section 811 (c) (1) (B) of the 1939 Internal Revenue Code, retained the right to designate the persons who should enjoy the transferred property or the income therefrom and also, as a transfer under which decedent, at his death, had the right to alter, amend, revoke or terminate pursuant to section 811 (d) (1) of said Code.

On December 6, 1952, the date of decedent's death, the fair market value of the property transferred by decedent to the trustees under the agreement dated December 30, 1938, was $106,274.51, and the fair market value of the entire trust corpus, including accumulations to the date of decedent's death, was $152,894.10.

Decedent retained no reversionary interest in the trust res or income, no power to alter, amend, revoke, or terminate the trust, and no power to designate the persons who should enjoy the transferred property or the income therefrom.

### OPINION.

Respondent determined and contends that the corpus of the trust created by decedent on December 30, 1938, is includible in decedent's gross estate under either or both subsections (c) (1) (B) or (d) (1) of section 811 of the Internal Revenue Code of 1939, as amended.[2] Peti-

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*     \*     \*     \*     \*     \*     \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\*     \*     \*     \*     \*     \*     \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

\*     \*     \*     \*     \*     \*     \*

tioners contend that the trust is not includible in the decedent's gross estate under either of the subsections but that, if it be held otherwise, then the amount includible is $106,274.51 rather than $152,894.10 as determined by the respondent.

In his briefs the respondent has conceded that if it were not for the so-called veto power contained in article III (c) of the trust instrument the corpus of the trust would not be includible in the decedent's gross estate. This so-called veto power reads as follows: "[A]nd provided, further, that during the lifetime of the Donor no such principal shall be distributed to any beneficiary without his prior written consent."

At no time during his lifetime did the donor ever have occasion to give his written consent to a distribution of principal under the conditions set forth in article III (c) of the trust instrument. The evidence shows and we have found that at no time during the period from the time the trust was created until the decedent's death did the donor's wife, or any child or grandchild of the donor, suffer any period of illness or other incapacity or make any request for a distribution of principal. The trust was declared to be irrevocable. It was to continue for a period of 7 years, or until the death of the donor's wife, whichever event occurred later. The trust instrument contained specific provisions for distribution and accumulation of income and for distribution of corpus upon termination of the trust. No part of the income or corpus could ever revert to the grantor. The donor retained no unconditional power to change, alter, amend, revoke, or terminate any of these provisions. His only power was a contingent one to give his written consent to an invasion of the corpus in case his wife or any child or grandchild suffered a period of illness or other incapacity for which other funds were insufficient. We think that in the absence of the occurrence of any of the conditions set forth in article III (c) of the trust instrument, during the donor's lifetime, the donor was without any power to redesignate the persons who shall possess or enjoy the property or income of the trust or to alter, amend, revoke, or terminate the same. It has consistently been held that such contingent powers do not require the corpus of the particular trust to be included in the gross estate of the decedent. *Daisy Christine Patterson, Executrix*, 36 B. T. A. 407, petition for review dismissed on motion of Commissioner 99 F. 2d 1007; *Tait v. Safe Deposit & Trust*

(d) REVOCABLE TRANSFERS.—

   (1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

*Co. of Baltimore,* 74 F. 2d 851, 858 (C. A. 4, 1935) ; *Commissioner* v. *Flanders,* 111 F. 2d 117 (C. A. 2, 1940), affirming our Memorandum Opinion on this issue; *Estate of Milton J. Budlong,* 7 T. C. 756, modified on another issue sub nom. *Industrial Trust Co.* v. *Commissioner,* 165 F. 2d 142 (C. A. 1, 1947) ; *Estate of Walter E. Frew,* 8 T. C. 1240; *Jennings* v. *Smith,* 161 F. 2d 74 (C. A. 2, 1947). In the latter case, the court said :

> The trustees' power to invade the capital of the trust property was exercisable only if the son or his issue "should suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary." Neither of these contingencies had occurred before the decedent's death ; hence enjoyment of the capital was not "subject at the date of his death to any change through the exercise of a power."

See also *Estate of C. Dudley Wilson,* 13 T. C. 869, affirmed per curiam 187 F. 2d 145 (C. A. 3, 1951) ; *Estate of Robert W. Wier,* 17 T. C. 409.

The respondent, in his reply brief, makes the statement "that none of the decided cases have considered a fact situation completely similar with that in the instant case." Notwithstanding this statement, he submits, however, that "the form of decedent's retained power has been considered and found includible under section 811 (c) (1) (B) and 811 (d) in" *Estate of Milton J. Budlong, supra; Estate of Cyrus C. Yawkey,* 12 T. C. 1164; *Commissioner* v. *Holmes' Estate,* 326 U. S. 480 (1946), rehearing denied 327 U. S. 813; *Estate of Paul Loughridge,* 11 T. C. 968, affirmed in part and reversed in part 183 F. 2d 294 (C. A. 10, 1950), certiorari denied 340 U. S. 830; and *Lober* v. *United States,* 346 U. S. 335 (1953).

The above cases cited by the respondent also involved other issues with which we are not here concerned. But insofar as they involved issues presumably considered by the respondent to be somewhat similar to the instant issue, we think the facts as to such issues are distinguishable from the facts in the instant case. In that part of the *Budlong* case wherein we held the corpora of certain trusts to be included in the gross estate under section 811 (c), the grantor had reserved a "right to designate the persons who shall possess or enjoy the property or the income therefrom." No such right was reserved by the donor in the instant case. In the *Yawkey* case, the decedent and his wife in 1935 created three lifetime trusts for the benefit of their three granddaughters, respectively. Each trust provided that until the beneficiary reached the age of 25, the trustees (consisting of decedent, his wife, and son-in-law) could, in their discretion, either distribute the income or accumulate it. Decedent died in 1943 before two of the grandchildren had attained the age of 25. Following the *Budlong* case, we held that the decedent's share of the contribution to those two trusts was includible in his gross

estate under section 811 (c). In the instant case, the trustees were to distribute 20 per cent of the income for the first 21 years and all of it thereafter. The decedent, in *Commissioner* v. *Holmes' Estate, supra*, reserved the power during his lifetime to terminate the trusts there in question. It was held that the corpora of such trusts were includible in Holmes' gross estate under section 302 (d) of the Revenue Act of 1926 as being a power to "alter, amend or revoke." In the *Loughridge* case, the grantor of a trust reserved the power to remove the trustee and appoint himself successor trustee and, in the latter capacity, to terminate the trust. He retained this power until his death. It was subject to no contingency. Our holding that the corpus of the trust was includible in that decedent's gross estate under section 811 (d) (2), I. R. C. 1939, was affirmed. The decedent, in *Lober* v. *United States, supra*, created three trusts for the benefit of his three children, respectively. He named himself the trustee of each trust. The trusts were declared to be irrevocable. Notwithstanding such declaration, the donor reserved the right "at any time he saw fit" to turn all or any part of the principal of the trusts over to his children. The trusts were held to be includible in the decedent's gross estate under section 811 (d) (2), I. R. C. 1939. We have no like situation in the instant case.

We hold there is nothing in section 811 (c) (1) (B) or (d) (1) of the Internal Revenue Code of 1939 which requires the corpus of the December 30, 1938, trust to be included in the decedent's gross estate. It thus becomes unnecessary to decide the issue concerning the amount to be included.

*Decisions will be entered under Rule 50.*