ESTATE OF ANDREA LA SALA, DECEASED, JOHN LA SALA, EXECUTOR, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5024–76.    Filed February 7, 1979.

Irving Greenbaum, for the petitioner.
Joan Ronder Domike, for the respondent.

TANNENWALD, Judge: Respondent determined a deficiency of

$38,593.79 in petitioner's estate tax. Concessions having been made by the parties, the issues remaining for decision are:

(1) The value of the distributive share of the estate of decedent's wife to be included in decedent's estate; and

(2) The amount of credit to which petitioner is entitled for tax paid on prior transfers.

### FINDINGS OF FACT

All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Andrea La Sala (decedent) died testate on August 31, 1972, a resident of Bronx County, N. Y. The Federal estate tax return for decedent's estate was filed with the Internal Revenue Service on June 4, 1973. The return showed a gross estate of $346,482.68 and a tax paid at the time of filing of $16,636.41. The executors of the Estate of Andrea La Sala are John La Sala and Stephen La Sala. The notice of deficiency was addressed to John La Sala as executor of the estate; he was a resident of Putnam County, N. Y., on the date the petition herein was filed.

Decedent was predeceased by both his daughter, Rose La Sala (Rose), and his wife, Teresa La Sala (Teresa). Rose died intestate on June 21, 1970. Stephen La Sala was the administrator of Rose's estate. The final determination of Rose's Federal estate tax liability, as accepted by the Internal Revenue Service, reflected a total Federal estate tax paid of $98,425.96, and a net estate available for distribution of $322,154.82. Of the net estate available for distribution, 50 percent ($161,077.41) was distributed to Teresa, Rose's mother, and 50 percent ($161,077.41) to decedent, Rose's father.

Teresa died testate, a resident of Bronx County, N. Y., on June 11, 1972, and left her entire estate to the decedent. The executors of the Estate of Teresa La Sala are also John La Sala and Stephen La Sala. A Federal estate tax return was filed for Teresa's estate with the Director of Internal Revenue, Manhattan District, New York. The return showed a gross estate of $222,302.34, a marital deduction of $99,551.32, and an estate tax liability of $4,719.24 before credit. A credit in that amount attributable to the tax paid on the prior transfer from Rose's estate was claimed. The respondent subsequently determined that the correct amount of Teresa's gross estate was $234,878.80

and allowed a marital deduction of $105,839.55. The resulting estate tax liability determined by respondent was $6,037.98 offset by a credit in that amount attributable to estate tax paid by Rose's estate.

The executors of Teresa's estate protested respondent's findings. In the protest, the executors stated that, to compute the tax liability of the estate of Teresa properly, reference must be made to the estate of her deceased spouse. There has never been a final determination of Teresa's estate tax liability.[1] However, the parties herein agree that the correct amount of Teresa's gross estate is $234,878.80, as determined by respondent. They further agree that, whether or not the estate tax liability of Teresa's estate was computed with a marital deduction, no estate tax would be due because of the credit attributable to the property transferred from Rose's estate.

Decedent died 2 months and 20 days after his wife, Teresa, and approximately 2 years and 2 months after his daughter, Rose. In computing decedent's gross estate, petitioner excluded the amount of the marital deduction claimed by Teresa's estate. Thus, petitioner computed decedent's distributive share of the Estate of Teresa La Sala as follows:

| | |
|---|---:|
| Total gross estate | $222,302.34 |
| Less: Real estate included in Schedule A | 50,000.00 |
| Balance | 172,302.34 |
| Less: Schedule J deductions | 23,199.70 |
| Balance | 149,102.64 |
| Less: Marital deduction | 99,551.32 |
| | 49,551.32 |

In the notice of deficiency herein, respondent redetermined the value of decedent's distributive share in Teresa's estate by correcting the amount of Teresa's gross estate and including the value of the property received from Teresa which was the subject of the marital deduction, as follows:

---

[1]While the record is inconclusive on this point, the petitioner included it as a proposed finding of fact to which respondent had no objection.

| | |
|---|---:|
| Corrected gross estate | $234,878.80 |
| Less: Real estate included in Schedule A | 50,000.00 |
| Balance | 184,878.80 |
| Less: Schedule J deductions | 23,199.70 |
| | 161,679.10 |

On the estate tax return for decedent's estate, petitioner claimed a credit of $35,029.66 attributable to the estate tax paid by Rose's estate on the property which passed on her death to decedent.[2] Respondent, after recomputing the value of decedent's distributive share of Teresa's estate, as set forth above, and making other adjustments not at issue here, determined that the credit under section 2013[3] for tax on prior transfers from the estates of Rose and Teresa should be no more than $42,411.77, of which $36,373.79 is attributable to Rose's estate and $6,037.98 is attributable to Teresa's estate.

## OPINION

The first issue for decision is the amount to be included in decedent's estate to reflect the bequest to him from his wife's estate. At the outset, it should be noted that the parties do not differ on the amount available for distribution from Teresa's estate. Nor does petitioner dispute that the value of the gross estate is determined by including the value of all property to the extent of the decedent's interest therein at the time of his death. Secs. 2031 and 2033. Petitioner contends, however, that the "value" of the property received from Teresa's estate to be included in decedent's gross estate is the amount of the bequest *reduced by the marital deduction used to determine Teresa's estate tax liability.* In support of its contention, petitioner relies on section 2013(d), which provides:

SEC. 2013. CREDIT FOR TAX ON PRIOR TRANSFERS.

(d) VALUATION OF PROPERTY TRANSFERRED.—The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor but—

---

[2] No credit was claimed in the return for any tax in respect of Teresa's estate, presumably because decedent's gross estate was computed by excluding property passing to decedent from Teresa which qualified for the marital deduction. Petitioner now seeks to claim an additional credit (in an undisclosed amount) in response to respondent's restoration of the property subject to the marital deduction.

[3] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.

*     *     *     *     *     *     *

(3) if the decedent was the spouse of the transferor at the time of the transferor's death, the net value of the property transferred to the decedent shall be reduced by the amount allowed under section 2056 (relating to marital deductions) as a deduction from the gross estate of the transferor.

Petitioner's argument ignores both the context of subsection (d) and its legislative history. Section 2013(a) allows a credit against estate tax for all or part of the Federal estate tax paid with respect to a transfer of property to the decedent by or from a person who died within 10 years before, or 2 years after, decedent's death.[4] Section 2013(b) provides that, subject to certain adjustments not material herein, the transferor's tax attributable to the property transferred to the decedent shall be determined by multiplying the estate tax paid by the transferor's estate by a fraction, the numerator of which is the "value of the property transferred" to the decedent and the denominator of which is the taxable estate of the transferor. Section 2013(d) provides for specified adjustments to the "value of property transferred to the decedent." Read in the context of the full spectrum of the provisions of subtitle B, chapter 11, subchapter A, which impose the estate tax, it is clear to us that the provisions of section 2013(d) simply provide a method of valuation of property transferred for the purpose of determining the credit for estate taxes previously paid and have no substantive effect on the includability or nonincludability of property in the gross estate. See *Estate of Gilruth v. Commissioner*, 50 T.C. 850, 852–854 (1968); sec. 20.2013–4, Estate Tax Regs. Thus, the effect of section 2013(d)(3) is to exclude, from the determination of the credit for tax paid on prior transfers, property on which no estate tax was paid by the transferor because of the marital deduction.

That this alone was the purpose of Congress in enacting section 2013(d)(3) is clear from its legislative history.

Section 812(c) of the Internal Revenue Code of 1939, the predecessor of section 2013, was amended in 1948, when the marital deduction was introduced, to disallow a deduction for tax paid on prior transfers with respect to property received from a decedent's spouse. Sec. 362, Revenue Act of 1948, ch. 168,

---

[4]The credit is limited to the amount of the present decedent's estate tax attributable to the transferred property and decreases in percentage amounts where the transferor predeceased the decedent by more than 2 years. Sec. 2013(c); sec. 2013(a).

62 Stat. 121. This disallowance was criticized because it denied any tax relief where property passed between spouses in excess of amounts for which a marital deduction could be taken. See B. Bittker & J. Frankel, "Previously Taxed Property and the Federal Estate Tax," 8 Tax L. Rev. 263, 282 (1953); H. Rudick, "The Estate Tax Deduction for Property Previously Taxed," 53 Col. L. Rev. 761, 778–779 (1953). In 1954, when the section 812(c) deduction was converted to a credit under section 2013, Congress reacted to this criticism by extending the credit to property acquired from a spouse, but, through the section 2013(d)(3) valuation procedure, Congress restricted the credit to property which did not qualify for the marital deduction.[5] The legislative history is devoid of any suggestion that Congress envisioned section 2013(d) as a general provision for valuation of the gross estate in terms of includability or nonincludability of property.

Petitioner argues that, by excluding the amount of the marital deduction from the value of decedent's gross estate, double taxation of the same property will be avoided. It is true that the property passing to the decedent from his wife was previously taxed in his daughter's estate. However, the fact that the same property is twice subject to tax is not sufficient to permit the deduction sought by petitioner, which is not authorized either by section 2013 or by any other Code section. *Jackson v. United States*, 376 U.S. 503, 509–510 (1964); *Pipe's Estate v. Commissioner*, 241 F.2d 210, 214 (2d Cir. 1957), affg. 23 T.C. 99 (1954), followed in *May's Estate v. Commissioner*, 283 F.2d 853, 856 (2d Cir. 1960), affg. 32 T.C. 386 (1959); *Loughridge's Estate v. Commissioner*, 183 F.2d 294, 301 (10th Cir. 1950), affg. in part and revg. in part 11 T.C. 968 (1948).

Moreover, petitioner's expansive reading of section 2013(d)(3) would bring that section into conflict with the marital deduction provisions. In enacting the marital deduction, Congress attempted to achieve parallel treatment of decedents' estates in

---

[5]See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 89–90 (1954), which states:

"Present law allows a deduction for property received from a prior decedent (or by a gift subject to tax) within 5 years of the current decedent's death. * * * [N]o deduction is allowable if the property was received from the current decedent's spouse.

"The committee's bill provides more equitable results * * * . *[P]roperty transferred between spouses, to the extent no marital deduction was available, is eligible for this credit.* [Emphasis added.]"

See also S. Rept 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 121 (1954).

community property and common law property States by means of a deduction from the gross estate of the spouse who dies first for the value of property which will ultimately be included, and subject to estate tax, in the estate of the surviving spouse. See *Jackson v. United States, supra* at 510; *United States v. Stapf,* 375 U.S. 118, 128 (1963); *Pipe's Estate v. Commissioner, supra* at 214. See also H. Rept. 1274, 80th Cong., 2d Sess. 24–26 (1948), 1948–1 C.B. 241, 260–261; S. Rept. 1013, 80th Cong., 2d Sess. 5 (1948), 1948–1 C.B. 285, 288.

If petitioner's reasoning were adopted, the amount deducted from the estate of the first spouse to die would also be deducted from the other spouse's gross estate and would never be subject to estate tax. Congress intended a mere postponement of, not an escape from, estate tax through the marital deduction. *United States v. Stapf, supra* at 128–129.

We conclude that section 2013(d) operates only to determine the amount of credit for tax on prior transfers and has no relevance to a determination of decedent's gross estate. Therefore, under the general principles of sections 2031 and 2033, decedent's entire distributive share in Teresa's estate is includable in his gross estate.

We turn to the issue involving the amount of credit to which petitioner is entitled under section 2013. The dispute centers around the property which passed on Rose's death to Teresa and on Teresa's death to the decedent.[6] Petitioner first contends that the full amount of tax paid on *that* property by Rose's estate should be taken into account in computing the credit to which decedent's estate is entitled. Petitioner points to the facts that an estate tax of $49,212.98 attributable to such property was paid by Rose's estate and that the three successive deaths of Rose, Teresa, and the decedent occurred well within the 10-year period which, by virtue of section 2013(a), limits the availability of the credit for tax on prior transfers.

Respondent, on the other hand, argues that the credit, which petitioner may claim with respect to such property, is limited to the amount of credit for tax paid on the transfer from Rose's estate to which Teresa's estate was entitled. Because respondent applied the marital deduction in calculating the tax liability of

---

[6]Although a final computation has not yet been agreed upon, there is no dispute about the sec. 2013 credit attributable to the property passing directly from Rose's estate to decedent.

Teresa's estate, that estate required a credit of only $6,037.98 to offset such liability completely. Thus, respondent contends that decedent's estate is limited to a credit of $6,037.98 with respect to the property passing from Rose to Teresa and then to the decedent.

Congress' purpose, in enacting section 2013 and its predecessors, was to prevent the depletion of a family's property by the imposition of successive estate taxes where two or more deaths occur within a short period of time.[7] The basic provision is section 2013(a), which provides in pertinent part as follows:

SEC. 2013(a). GENERAL RULE.—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to *the transfer of property* (including property passing as a result of the exercise or non-exercise of a power of appointment) *to the decedent by or from a person (herein designated as a "transferor")* who died within 10 years before, or within 2 years after, the decedent's death. * * * [Emphasis added.]

Thus, a "transferor" under section 2013 is a person by or from whom property is transferred to a decedent. The term "transfer" is defined by section 20.2013–5(b), Estate Tax Regs., as "any passing of property or an interest in property under circumstances which were such that the property or interest was included in the gross estate of the transferor."

Subsection 2013(e) defines "property" for the purposes of section 2013 to include "any beneficial interest in property." See also sec. 20.2013–5(a), Estate Tax Regs.

The issue of whether Rose was a transferor to decedent can be reduced to the following question: Did a beneficial interest in the property which Teresa received from Rose pass from Rose to the decedent? Petitioner contends that this question should be answered in the affirmative merely because the property was included in Rose's gross estate and she predeceased decedent within the requisite 10-year span. We disagree.

For the purposes of section 2013, whether an interest in property has been transferred is determined as of the date of the alleged transferor's death. *Estate of Lion v. Commissioner*, 438 F.2d 56 (4th Cir. 1971), affg. 52 T.C. 601 (1969); *Old Kent Bank & Trust Co. v. United States*, 292 F. Supp. 48 (W.D. Mich. 1968), revd. on other issues 430 F.2d 392 (6th Cir. 1970). At the time of

---

[7]H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939–1 C.B. (Part 2) 86, 102; H. Rept. 1337 (n. 5 *supra*) at 90, A309; S. Rept. 1622 (n. 5 *supra*) at 463.

Rose's death, decedent had no right to any present or future enjoyment of that part of Rose's property inherited by Teresa. Any interest in that portion of Rose's estate which decedent might have had was purely speculative. It was contingent upon the disposition which Teresa chose to make of her property. In sum, decedent received no beneficial interest in the property which passed to Teresa, and Rose, therefore, was not a transferor to decedent with respect to that property. Cf. *Loughridge's Estate v. Commissioner,* 183 F.2d at 299 (where mother gave property to son and son set up trust for his children, mother was not a transferor to son's children, because there was no condition on gift to son requiring him to make a gift to his children).

Unquestionably Congress, in drafting section 2013, anticipated the possibility of property passing through three estates in succession.[8] Accordingly, it provided for credit for tax on prior transfers to be passed through one estate to a subsequent estate, where three or more deaths occur within a 10-year period. This passthrough is accomplished by section 2013(b) which provides, in relevant part, that for the purpose of computing the credit,

the estate tax paid. [with respect to the estate of the transferor] shall be the Federal estate tax paid *increased * * * for any credits allowed against such estate tax under this section on account of prior transfers where the transferor acquired property from a person* who died within 10 years before the death of the decedent. [Emphasis added.] [9]

But section 2013(b) provides no sustenance to petitioner. Indeed, by distinguishing between direct transfers to decedent and indirect transfers through an intervening estate by using the term "prior transfer" to refer to the latter situation, Congress clearly implied that the term "transferor" was intended to apply only where the transfer was made directly to the decedent. Moreover, to interpret "transferor," as petitioner urges, to refer to both an immediately preceding estate and a prior estate would, in some cases, allow a double credit for the

---

[8]H. Rept. 1337 (n. 5 *supra*) at A310; S. Rept. 1622 (n. 5 *supra*) at 464.

[9]Thus, the formula for computing the sec. 2013 credit, insofar as it is relevant herein, can be summarized as:

$$\text{Credit} = \frac{\text{Value of property transferred to decedent}}{\text{Value of transferor's taxable estate}} \times \frac{\text{Estate tax paid by transferor}}{\textit{plus transferor's sec. 2013 credit}}$$

same tax paid. Credit could be claimed once on account of the credit taken by an immediate transferor with respect to a prior transfer and again for the tax paid by the prior transferor on that same transfer.[10]

The petitioner's assertion that "the credit for tax on prior transfers of property should follow the property on which such tax was paid" simply does not comport with the language of the statute. This Court has previously held that the statutory formula of section 2013 governs even if it results in less than 100 percent of the tax on prior transfers being allowed as a basis for the credit. See *Estate of Gilruth v. Commissioner*, 50 T.C. at 855–856; *Estate of Wood v. Commissioner*, 54 T.C. 1180, 1186–1188 (1970). Furthermore, Congress in section 2013 sought to eliminate any necessity for tracing the passage of property through successive estates and to focus only on the tax paid or credit claimed by a prior estate.[11]

In *United States v. Denison*, 318 F.2d 819 (5th Cir. 1963), the Fifth Circuit reached the same conclusion which we reach here. In that case, the decedent received a substantial portion of her gross estate from the estate of her husband, who had previously received a large part of his estate from the estate of his brother. The brother's estate had paid a large estate tax, but there was no estate tax due on the husband's estate after applying the specific exemption and the marital deduction. The decedent's estate sought a credit under section 2013 on account of the tax paid by the brother's estate, although decedent's immediate transferor, her husband, was not entitled to any credit.

The Court of Appeals reversed the decision of the district court[12] which had allowed the credit on the ground that the intent of Congress was to subject property to an estate tax only once where it passed through two or more successive estates in a 10-year period. The Fifth Circuit based its decision on the statutory formula of section 2013, concluding that—

Under the statute, any credit for tax on prior transfers available to the estate of [decedent] would be based *directly* upon an estate tax paid by the estate of her husband, increased by any credit under Section 2013 actually allowed to his

---

[10]Sec. 2013(c)(2), captioned "Two or more transferors," is not relevant herein, because it deals with different property received from different estates, not the same property passed through successive estates.

[11]H. Rept. 1337 (n. 5 *supra*) at 89; S. Rept. 1622 (n. 5 *supra*) at 463.

[12]*Denison v. United States*, an unreported case (S.D. Ga. 1961, 9 AFTR2d 61–1894, 62–1 USTC par. 12,048).

estate against the payment of such tax otherwise owing. Thus, the availability of a credit to [decedent's] estate is dependent upon the existence of a prior taxable estate in her husband. * * * The fact that the transferor's estate would have been allowed a credit under Section 2013 if a taxable estate had existed does not change the result in the face of the statutory language. Where the transferor, as here, left no taxable estate and no taxes were paid or credits allowed, the decedent's estate may not receive a credit for tax on prior transfers under Section 2013. * * * [318 F.2d at 822; emphasis added.]

We conclude that Rose was not a transferor of decedent with respect to the property which passed first to Teresa and that Teresa was the transferor of such property. Accordingly, since Teresa's estate was not, on account of the marital deduction, entitled to a credit for the full amount of the tax paid by Rose's estate on the transfer of such property to Teresa, the excess credit is lost to decedent's estate.[13]

Petitioner seeks to avoid the import of the foregoing analysis by arguing alternatively that the estate tax paid in respect of the estate of Teresa should be computed without taking into account the marital deduction, on the ground that the use of the deduction should not be required where it results in an increased estate tax burden on her spouse's estate. Respondent's position is that the operation of the marital deduction is mandatory and that no waiver of such deduction is permissible under the circumstances of this case. See Rev. Rul. 59–123, 1959–1 C.B. 248.

Section 2056 provides in part:

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.
(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate *shall, except as limited by subsections (b), (c), and (d) be determined by deducting* from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * * [Emphasis added.]

The most persuasive evidence of congressional intent is the wording of the statute. See *United States v. Amer. Trucking Ass'ns.*, 310 U.S. 534, 543 (1940). And, the word "shall" is the single most important textual consideration in evaluating whether compliance with a statutory provision is mandatory or

---

[13]Thus, if A transfers property to B, who transfers property to C, and the estate of B has no estate tax liability and, therefore, claims no credit under sec. 2013, the estate of C cannot claim any credit for tax paid by the estate of A. See C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes 615 (3d ed. 1974); H. Rudick, "The Estate Tax Credit for Tax on Prior Transfers," 13 Tax L. Rev. 3, 12–13 (1957).

directory. 2A Sutherland, Statutes and Statutory Construction, sec. 57.03, p. 415 (4th ed., C. Sands, 1973). The verb "shall" is ordinarily a word of command. See *Association of American Railroads v. Costle,* 562 F.2d 1310, 1312 (D.C. Cir. 1977). However, the use of the word "shall" is not the sole determinant of whether a statute is mandatory or directory; context and legislative intent may be considered. See *Sierra Club v. Train,* 557 F.2d 485, 489 (5th Cir. 1977); *United States v. Reeb,* 433 F.2d 381, 383 (9th Cir. 1970); *United States v. St. Regis Paper Co.,* 355 F.2d 688 (2d Cir. 1966); 1A Sutherland, *supra,* secs. 25.03, 25.04, pp. 299, 301 (4th ed., C. Sands, 1972); 2A Sutherland, *supra,* sec. 5703 at 415.[14]

The legislative history of the marital deduction is ambiguous as to whether it was intended to be mandatory or elective. On the one hand, the use of the word "shall" in section 2056 merely conforms to the usage found throughout part IV of subchapter A, chapter 11, and its predecessors since the inception of the estate tax in 1916. See Revenue Act of 1916, sec. 203, ch. 463, 39 Stat. (Part 1) 778. In referring to the marital deduction (as well as other deductions in part IV), congressional committee reports have used the terms "allowed" or "allowable." See, e.g., S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948–1 C.B. 285, 332–335.

On the other hand, the congressional purpose behind the enactment of section 2056 was to achieve uniformity of Federal estate taxation between those States with community property laws and those without them. *Northeastern Pa. Nat. Bank & Trust Co. v. United States,* 387 U.S. 213, 219 (1967); *Jackson v. United States,* 376 U.S. at 510; *United States v. Stapf,* 375 U.S. at 128; H. Rept. 1274, 80th Cong., 2d Sess. (1948), 1948–1 C.B. 241; S. Rept. 1013, *supra.* To permit taxpayers to waive the marital deduction would extend to residents of common law property States an advantage not available to residents of community property States.

Admittedly, the uniformity of estate tax treatment achieved by section 2056 is not complete. See *Jackson v. United States,* 376 U.S. at 510. In particular, subsection 2056(d)(1) specifically

---

[14]Those cases in which the courts have disregarded the ordinary meaning of the word "shall" and found a statute to be elective, despite the usage of that word, have generally involved mere procedural or jurisdictional requirements, rather than a rule of substantive law like the one in question here. See, e.g., *Sierra Club v. Train,* 557 F.2d 485 (5th Cir. 1977); *United States v. Cook,* 432 F.2d 1093, 1098 (7th Cir. 1970); *United States v. St. Regis Paper Co.,* 355 F.2d 688 (2d Cir. 1966).

provides for a disclaimer by the surviving spouse of a share in the decedent's estate which would otherwise qualify for the marital deduction.[15] This option is not available where community property is involved.

Nevertheless, in view of the legislative intent underlying the enactment of the marital deduction, we are unwilling to deviate further from the goal of uniformity by creating exceptions to section 2056(a) beyond those enumerated by the statute. Petitioner does not contend that Andrea La Sala or his estate disclaimed the bequest passing to him from Teresa,[16] cf. *Rolin's Estate v. Commissioner,* 588 F.2d 368 (2d Cir. 1978), affg. 68 T.C. 919 (1977), and we reject its attempt to have us carve out a judicial exception to section 2056 by way of a "constructive waiver" of the marital deduction by the surviving spouse. In short, we see no reason not to give the words "shall * * * be determined by deducting" their ordinary meaning, i.e., to construe the provision as mandatory. Cf. *Dravo Corp. v. United States,* 133 Ct. Cl. 470, 138 F. Supp. 274 (Ct. Cl. 1956); *A. Teichert & Son, Inc. v. Commissioner,* 18 T.C. 785 (1952). See *Malat v. Riddell,* 383 U.S. 569, 571 (1966); *Commissioner v. Brown,* 380 U.S. 563, 571 (1965); *Hanover Bank v. Commissioner,* 369 U.S. 672, 687 (1962).

In essence, petitioner would like to have us treat the computation of the estate tax credit herein on the same basis as it would have been computed if Teresa had predeceased Rose and the decedent herein had been the sole distributee of Rose's estate. But the fact of the matter is that this sequence of events did not occur and we find nothing in the statute or legislative history to support the computation of the appropriate credit under section 2013 on the basis of hypothetical rather than actual circumstances. Cf. *Connecticut Bank & Trust Co. v. United States,* 439 F.2d 931 (2d Cir. 1971); *Brooks' Estate v. Commissioner,* 250 F.2d 937 (3d Cir. 1958), affg. 27 T.C. 295 (1956). It may be that, in circumstances such as exist in this case, the statute is an "imperfect device" to "achieve the desired end" but it is "the means which Congress chose" and we should not stray from what seems to be the clear legislative mandate. See

---

[15]We note that Congress, in subsecs. 2056(b) and (c), imposed further specific limitations on the availability and amount of the marital deduction which are not relevant herein.

[16]Teresa left her entire estate to Andrea (see p. 753 *supra*), and, for aught that appears in this record, her entire estate has actually been distributed in accordance with Teresa's will.

*Jackson v. United States*, 376 U.S. at 510. We hold that petitioner may not determine its credit under section 2013 based on a computation of the estate tax liability of the estate of Teresa without taking into account the marital deduction.

*Decision will be entered under Rule 155.*